BOCKES *v.* A. McAFEE & SON CO.

1. DAMAGES—TRESPASS—STANDING TIMBER—LOGS AND LOGGING.
   In trespass for cutting growing timber, that was in part too
   small to have a market value, the damages were properly
   determined by the trial court hearing the cause without a
   jury, on the basis of the damage to the freehold, taking into
   consideration the value of the merchantable timber cut and
   the decrease in value caused by cutting the small timber.

2. SAME—TREBLE DAMAGES—STATUTES.
   On a record showing that trespassers on timber lands went
   over the land three years previously, and that the evidence
   was conflicting as to their intent and want of care in deter-
   mining the correct boundaries, the trial court was justified
   in trebling the damages under 3 Comp. Laws, §§ 11204, 11205.

Error to Kalkaska; Lamb, J.  Submitted January 18,
1911.  (Docket No. 105.)  Decided March 13, 1911.

Trespass *quare clausum fregit* by William H. Bockes
and Charles E. Mahan against A. McAfee & Son Co.
Judgment for plaintiffs.  Defendant brings error.  Af-
firmed.

*I. C. Wheeler*, for appellant.

*Chauncey C. Jencks*, for appellees.

MOORE, J.  This is an action of trespass *quare clau-
sum fregit* brought by the plaintiffs.  The attached plat
will aid in understanding the situation.

The declaration contained two counts.  One was the
ordinary count in trespass, and the other count under the
statute.  The plea was the general issue.  This case was
tried by the court without a jury.  The findings of the
trial judge important to mention are as follows:

" (2) Some time during the fall or summer of 1908, the
defendant, A. McAfee & Son Company, a corporation, by
its agents and employés, and without any right, title, or

interest in said land, and without leave or license, and
without the knowledge or consent of the plaintiffs, entered
upon the aforesaid land and cut and removed therefrom

from 223 to 240 thrifty young growing trees, principally
tamarack and cedar, with a smaller quantity of other
varieties—pine, black ash, balsam, etc. About 200 of
said trees ranged in size from 4 inches to 14 inches (aver-

aging about 7 or 8 inches) in diameter, at the butt, while the remainder were from 2 inches to 4 inches in diameter.

"(3) I find the actual stumpage value of the timber cut and removed from said land, which was large enough to be of any value for logs, to be the sum of $12.69, being $5 per 1,000 feet for 2,538 feet.

"(4) The plaintiffs are now, and for many years last past have been, engaged in the business of buying, selling, and handling timber and timber lands, and have invested to some extent in lands upon which there is thrifty young timber growing, for the purpose of holding the same for future profits from the growth and advance in price of such timber. The land in question here was purchased by them and held for this purpose, and is of no great value for any other purpose. I find the damage to the freehold, independent of the value of the timber cut, to be the sum of $25.   * · *   *

"(9) I find the damage to the freehold by reason of the cutting of said timber and the removal of the same to be the sum of $37.69, including the value of the timber cut and removed.

"(10) I find that the trespass in question was due to the failure on the part of the defendant to take proper measures to guard the rights of the plaintiffs. The testimony fails to show that the defendant made any effort to correctly determine the boundary lines in question until after its attention had been called to the trespass. Its action in deliberately going upon the land in question, without knowledge or having good reason for believing it was on its own land, indicates a wanton disregard for the rights of the plaintiffs. The trespass was not casual and involuntary."

## "Conclusions of Law.

"1. Under the statute on which this suit is brought, the measure of damages is the injury to the freehold, and that injury is not determined alone by the value of the timber cut and removed.

"2. Where a trespass is committed by the subordinate employés of a corporation, the doctrine of *respondeat superior* applies to the corporation.

"3. The burden of proof to show that the trespass was casual and involuntary is upon the defendant, and it has not been sustained in this case."

Counsel say this case presents to the court for determination two questions:

"(1) The legality of the rule adopted by the plaintiffs in fixing the amount of damage sustained by them by reason of defendant's trespass, viz.: They claim they were entitled to damages based upon future profits which might accrue by holding the land and timber for a supposed increase in the growth and value of the timber, without regard to its present value.

"(2) Whether or not the trespass was casual and involuntary, and whether or not the damages should be trebled."

1. Did the court err in reaching the amount of actual damages found by him? It was conceded that defendant had committed the trespass. There was testimony as to the number of trees which were cut and their sizes, and the stumpage value of those trees which were large enough to have stumpage value. The testimony disclosed that many of the trees were so small as to have no stumpage value, but they were young and thrifty. There was testimony to the effect that plaintiffs bought the land because of this young growing timber, to hold the land as an investment. There was testimony to the effect that the land was damaged, to one who was holding it as an investment, to the the extent of $50 to $75 by reason of the cutting of the young trees.

In 4 Sutherland on Damages (3d Ed.), p. 2980, in discussing the liability for cutting trees, the author says:

" The plaintiff may adopt the value of the timber as the measure of his damages, but is not obliged to do so; if the injury to the land exceeds the value of the timber, or, in other words, if the trees were worth more standing, he may recover their value as part of the land. Hogeboom, J., forcibly said:

" 'Surely the damage would not be in all cases accurately measured by the market value of the wood or timber when cut. The trees might be a highly valuable appendage to the farm for purposes of shade or ornament; there might be a very scanty supply for a farm of that size; or for other reasons they might have a special value as connected with the farm, altogether independent

of, and superior to, their intrinsic value for purposes of building or fuel.   As well might you remove the columns which supported the roof or some part of the superstructure of a splendid mansion, and limit the owner in damages to the value of these columns as timber or cordwood, as to adopt the parallel rule in this case.'

"The damages for the loss of trees are not to be estimated solely with reference to the tract of land on which they were growing, that being a part of the farm of the plaintiff, though the tract was separated from the remainder of the farm by a railroad.   It was observed by the writer of the opinion that each part of the farm appears to have sustained some relation to the other part.   The grove, doubtless, was designed to make the farm more habitable. If it had any value, we infer it consisted principally in the fact that it furnished shade and was a windbreak, and perhaps was ornamental, and so added somewhat to the value of the farm in its entirety."

In *Isle Royale Mining Co.* v. *Hertin*, 37 Mich. 332, on page 337 (26 Am. Rep. 520), Justice Cooley, who delivered the opinion, said:

" The trees are not only susceptible of being traced and identified in the wood, but the difference in value between the two is not so great but that it is conceivable the owner may have preferred the trees standing to the wood cut. The cord wood has a higher market value, but the owner may have chosen not to cut it, expecting to make some other use of the trees than for fuel, or anticipating a considerable rise in value, if they were allowed to grow.   It cannot be assumed as a rule that a man prefers his trees cut into cord wood rather than left standing, and if his right to leave them uncut is interfered with even by mistake, it is manifestly just that the consequences should fall upon the person committing the mistake, and not upon him."

In *Gates* v. *Comstock*, 113 Mich. 127 (71 N. W. 515), it was held, in a case where testimony had been given of the value of the real estate, both before and after the trespass, that the jury might consider the value of the stumpage as throwing some light upon the injury to the freehold.   We think the testimony was admissible as bearing upon the amount of the damages to the freehold,

and that there was testimony tending to establish the amount of the actual damages as found by the trial judge.

2. Did the court err in granting treble damages? The right to treble damages for the cutting of the trees is clearly given by section 11204, 3 Comp. Laws. The following section provides that only single damages shall be assessed, if on the trial it shall appear that the trespass was casual and involuntary, or that the defendant had probable cause to believe the land was its own. In this case the trial was in open court. Mr. McAfee, of the defendant company, was a witness. His testimony discloses that he was over the land three years before the trespass. The plat showing the shape of the land upon which the trespass was committed was before the court. Many witnesses were sworn as to the line and as to what occurred. We do not think it clear that the court should have determined that defendant brought itself within section 11205, 3 Comp. Laws. See *Congdon* v. *Bailey*, 121 Mich. 570 (80 N. W. 369), and the many cases there cited.

Judgment is affirmed.

OSTRANDER, C. J., and BIRD, HOOKER, and McALVAY, JJ., concurred.