CONNOR v. McRAE.

1. APPEAL AND ERROR—TRESPASS—EVIDENCE—DAMAGES.

Where a witness was asked, on cross-examination in *tres-pass quare clausum*, if a good logging road cut through timber would not add to its value, and he stated that it would depend on circumstances and that he would consider it damaged to the value of the timber cut, the reply of the witness did not prejudice plaintiff and was not reversible error. Nor was it error to allow plaintiff, who was asked if he had any sinister motive, to reply that he had not. Considerable latitude is allowed on cross-examination of a party to the action to ascertain his interest, candor, etc.

2. SAME—CROSS-EXAMINATION—DISCRETION OF COURT.

The trial court did not err in refusing a request of plaintiff that under the testimony a stated quantity had been removed, estimates of the parties being contradicted and in conflict.

3. SAME—TRIAL.

That the court refused a request, which the jury's finding covered in a manner favorable to the appellant, was not a ground for reversal.

4. SAME—TRIAL—CHARGE—TREBLE DAMAGES.

No liability for treble damages arises under 3 Comp. Laws, §§ 11204, 11205, 3 Comp. Laws 1915, § 14632, if the trespass was casual and involuntary, or if the defendant had probable cause to believe that he owned the timber. *Held*, under the evidence, that the question was one for the jury.

5. SAME—TRESPASS—LOGS AND LOGGING.

And there were sufficient grounds for submitting separately two trespasses for cutting timber to the jury, to determine whether they were casual and involuntary so as to prevent liability for treble damages, where it was claimed one was where defendants had no timber and the other was in a section in which they owned a quarter section, and cut over the line.

6. NEW TRIAL—SUFFICIENCY OF AFFIDAVIT.
   Affidavits of plaintiff and his attorney upon a motion for
   a new trial, as to what an absent witness would testify
   to, are insufficient, since such motion should not be grant-
   ed upon hearsay testimony.

Error to Gogebic; Cooper, J. Submitted October 3, 1916. (Docket No. 20.) Decided December 21, 1916.

Trespass *quare clausum fregit* by Robert Connor and another against Hector McRae, Donald McRae, and Paul Francis for treble damages under 3 Comp. Laws, § 11204 (3 Comp. Laws 1915, § 14632). Judgment for plaintiffs for an insufficient amount. Plaintiffs bring error. Affirmed.

*Herbert M. Norris,* for appellants.

*Van Slyck & Hall,* for appellees McRae.

STONE, C. J. This is an action of trespass on land for treble damages, brought under section 11204, 3 Comp. Laws (3 Comp. Laws 1915, § 14632). The plaintiffs owned lot 1 of section 10, and the northeast quarter, the southeast quarter, and the southwest quarter of section 14 in township 50 north, range 45 west, in Gogebic county; and the defendants McRae owned section 16 and the northwest quarter of section 14 in the same township.

On October 2, 1912, the defendants McRae entered into a contract with the John Schroeder Lumber Company to sell to it the hemlock, basswood, ash, spruce, balsam, maple, birch, and cedar logs on said section 16 and the northwest quarter of section 14. The logs from section 16 were to be banked on said section, and the logs from the northwest quarter of section 14 were to be banked on section 10, on the shore of Lake Superior, and the timber was to be logged in the winter of 1912-13.

On October 7, 1912, the defendants McRae entered into a contract with the defendant Francis to cut into logs all of the timber on said northwest quarter of section 14 and the entire of section 16, and bank the same on said sections 10 and 16 on the shore of Lake Superior.

One Ira Bush was interested with the defendants McRae in the contract between them and the Schroeder Lumber Company and the Francis contract, and did the principal part of the negotiating of the two contracts. He did not own any interest in the land, but had financial interest in the net profits, which was to be one-half. This interest was confined to section 14.

Before the contract with defendant Francis was signed defendant Hector McRae and Mr. Millard, a surveyor, and defendant Francis, were on section 14 looking over the timber, and it was then known to both Mr. McRae and Mr. Francis that the lines on the east and south sides of the northwest quarter of section 14 could not be followed, but that the other lines, namely, the section lines, could be followed easily.

According to the testimony of defendant Francis, it was agreed between him and Mr. Bush at the time the contract with him was made that Mr. Millard, or some one else, would go up and run the lines some time before Francis should go to cutting. This was denied by Mr. Bush, but he did testify that after Mr. Francis got started he told Mr. Francis that, if he would let him know a few days beforehand, he would send Mr. Millard up to run the lines. He also testified on cross-examination:

"I told Mr. Francis that I wanted to run those lines, or have those lines run so that he wouldn't commit any trespass."

The defendant Francis began operations by build-

ing camps on October 17, 1912, and Mr. Millard did not run the lines on section 14 until about January 23, 1913, and after the trespass on section 14 had been committed.

Defendants McRae knew that they owned no land on section 10 where the logs were to be banked which were taken from the northwest quarter of section 14, and they never attempted to get permission to bank the logs there. Defendant Francis claimed that he supposed Mr. Bush was to arrange for banking on section 10, but Mr. Bush never arranged for banking on said section. No permission was ever given by the plaintiffs to cut any timber on their lands on section 14, or on section 10, or to bank any timber on section 10.

Before Mr. Millard came to make the survey and before the cutting, Gordon McLean, one of defendant Francis' employees, who had had some experience in running lines, ran the lines on the east and south of the northwest quarter of section 14 by stepping it off and using a pocket compass. McLean, in trying to verify his first line, ran a new line which was inside the first line and nearer to the McRae land. This was in the latter part of December and before Mr. Millard ran the lines. By cutting to the McLean inside line the defendants trespassed upon the southwest quarter of section 14, it is claimed by plaintiffs, 9 rods and 23 links south of the center post, running from there diagonally northwesterly to the southwest corner of the northwest quarter of section 14; and on the northeast quarter of the section at the eighth line it was cut for the space of 15 rods running diagonally from the eighth line northwesterly to the northeast corner of the northwest quarter of section 14, and from the eighth line southwesterly to the southeast corner of the northwest quarter of section 14, making, it is claimed, 5 acres on the north of the southwest

quarter and 7½ acres on the west of the northeast quarter from which the timber was cut on section 14, making a total claimed by the plaintiffs of 94,560 feet, of which 82,860 was hemlock, the remainder consisting of maple, ash, basswood, and birch.

It was further claimed by the plaintiffs that the timber that was cut on the logging road of lot 1, section 10, was a total of 3,650 feet, and the estimated amount of timber cut on the landing on lot 1 of said section 10, of all kinds and sizes, was 25,000 feet, making a total trespass of 123,210 feet.

There was a conflict of testimony as to the quantity and value of this timber; but, taking the Schroeder Lumber Company's contract and the Francis contract as the basis for determining the stumpage value of the timber that was cut, the hemlock 12 to 16 feet long would be $1.75 per thousand, and from 18 to 24 feet would be $2.75; basswood and ash would be $5.75, and birch would be $2.75; maple would be $.75, and spruce and balsam would be $3.75.

When defendant Hector McRae's attention was called to the fact that there was a trespass on section 14, there was testimony tending to show that he said:

"I wouldn't say anything about it, they will find out soon enough about the trespass."

This was denied by the defendant Hector McRae.

The case was submitted to the jury, and they were instructed by the court that the trespass on lot 1, section 10, and on the northwest quarter of section 14 was undisputed, and that the only questions for the jury were as to the extent of such trespass and the resulting damages, and the jury were required to answer certain special questions as follows:

"Did the defendants McRae trespass casually and involuntarily on lot 1, section 10?" The answer was: "No."

"Did the defendants McRae trespass casually and involuntarily on section 14?" This was answered: "Yes."

"Was the trespass on lot 1 of section 10, casual and involuntary on the part of defendant Paul Francis?" Answer: "No."

"Was the trespass on the west half of the northeast and north half of the southwest quarter of section 14 casual and involuntary on the part of defendant Paul Francis?" The answer was: "Yes."

So that it appeared by the verdict of the jury that as to all the defendants the trespass was wilful on lot 1, section 10, and casual and involuntary as to all defendants on section 14. The jury found that the quantity of timber cut on lot 1, section 10, was 15,000 feet valued at $2 per thousand, being $30, which sum was trebled by the circuit court in entering judgment. The jury also found that the damage on section 14 was 8 acres at 10,000 feet per acre, or 80,000 feet in all, and that the value per 1,000 feet was $1.75, making a total for damages on section 14 of $140.

There was a motion for a new trial on the part of the plaintiffs based on the following reasons:

(1) Because the verdict of the jury in finding that the trespass was casual and involuntary as to section 14 was against the weight of the evidence.

(2) Because the verdict of the jury as to the amount of damages on lot 1, section 10, was inadequate and contrary to the weight of the evidence.

(3) Because the verdict as to the amount of damages on section 14 was inadequate and contrary to the weight of the evidence.

(4) Because since the trial the plaintiffs had discovered new evidence material to the issue in said cause, which was not cumulative, and which was not, and could not have been, discovered before the trial.

(5) Because the court erred in its charge to the jury on the subject of the trespass being casual and involuntary, in that the court unduly emphasized the position taken by the defendants, and because the court refused to give plaintiffs' requests to charge,

and because the charge of the court as given would lead the jury to believe that in order to find that the trespass was not casual and involuntary there must be proof that defendants cut timber of plaintiffs, knowing the same to be plaintiffs' land, and that they should not take into consideration the facts shown by plaintiffs as sufficient, if the jury believed them, to warrant them in finding that the trespass was not casual and involuntary.

The motion for a new trial was denied, and reasons therefor were stated in writing by the circuit judge. These were duly excepted to, and the questions involved were raised. The plaintiffs have brought the case here upon writ of error. There is a large number of assignments of error. Seven of them relate to alleged errors in the rulings of the trial court in the admission of evidence; ten of them relate to the refusals of the trial court to charge the jury as requested by plaintiffs' counsel; six of them relate to the charge of the court as given; and the remainder relate to the questions raised by the motion for a new trial and reasons given for refusing the same.

The case was submitted to this court upon briefs, and the assignments of error relied upon by the plaintiffs were as follows:

Second assignment of error: In the cross-examination of the plaintiff's witness Harris, he was asked the following question:

"Now, a good logging road that is built down through a creek bottom, through a tract of timber, adds to the value of it, instead of depreciating the value; isn't that a fact?"

This was objected to on the ground that it was incompetent, irrelevant, and immaterial. The court permitted the question to be answered, and the plaintiffs duly excepted. The answer was:

"That would depend upon circumstances and whether the prospective landowner intended to log his land

and how he intended to log it. It would also depend on whether there was a good logging road there or a poor one."

The third assignment of error relates to the same subject, and the question arose in the cross-examination of the same witness where he was asked the following: .

"If you were sent out by your principal, Mr. Connor, to look over a tract of timber owned by Mr. Norris with the view of purchasing it to operate next winter, and you found right down through the center of that timber a good, wide logging road cut through, would you tell Mr. Connor that, in your opinion, it was a damage to the tract or a benefit?"

The same objection, ruling, and exception. The witness answered:

"I should tell my employer or whoever I was looking over that land for that the damage to that land would be the amount of the value of the timber that had been cut in the logging road, and I would expect him to pay for it."

It is the claim of the appellees that under the holding of this court in *Burtraw* v. *Clark,* 103 Mich. 383 (61 N. W. 552), the ruling of the court was not erroneous. That was trespass for digging a drain, and defendant sought to show that the drain was a benefit, and it was held the defendant was entitled to make the showing. Whether erroneous or not, we are satisfied from the perusal of the record, and in view of the answers to the questions, that the rulings were not prejudicial to the plaintiffs; and the case should not be reversed unless it be found there was prejudicial error in the rulings of the court.

The fourth assignment of error relates to the question asked the plaintiff Robert Connor upon his cross-examination:

193 Mich.—44.

"*Q.* Did you have any sinister motive in wishing to prevent those boys from transporting this timber out to the shore of Lake Superior?

"*A.* What is that?

"*Q.* Did you have any sinister motive? Did you want to harass them or prevent them from marketing their timber?

"*A.* No."

An exception was taken to these questions. The answers to these questions being in the negative, we do not see how the plaintiffs were prejudiced thereby, and we think there is no merit in this assignment of error. This witness was one of the plaintiffs, and considerable latitude should be allowed in the cross-examination of a party to ascertain whether his testimony was affected by his interest.

The remaining assignments of error relating to admission of testimony, we think, do not require discussion.

The ninth assignment of error is based upon the refusal of the court to charge the jury as requested as follows:

"I charge you that, under the undisputed evidence in this case, there was a trespass committed by the defendants in this case upon the lands of the plaintiffs, being the west half of the northeast quarter and the north half of the southwest quarter of section 14 and lot 1 of section 10 in township 50 north of range 45 west, not only by the cutting and destroying of the timber, but also by the carrying away of the timber, that, under the undisputed evidence, timber to a considerable amount was cut upon said lands, and the same was carried away and converted by the defendants McRae to their own use by the sale thereof, and that because of this plaintiffs are entitled to recover against the defendants the value of the timber so cut, destroyed, and carried away. The evidence is undisputed that the timber which was so cut, destroyed, and carried away was made up of hemlock, maple, ash, basswood, birch, and cedar, and I charge you

that, under the evidence in this case, there was on section 14, 82,860 feet of hemlock, 830 feet of maple, 2,780 feet of ash, 7,710 feet of basswood, and 380 feet of birch, and that on section 10 there was 2,090 feet of hemlock, 340 feet of maple, 120 feet of ash, 120 feet of basswood, 170 feet of birch, and 810 feet of cedar, and that in addition to this on section 10 and on what is termed the landing there was an estimated destruction of timber to the amount of 25,000 feet composed of hemlock, birch, and cedar."

We have stated that the court charged the jury that under the undisputed evidence there was a trespass committed by the defendants upon the lands of the plaintiffs, leaving the amount of the trespass to be ascertained from the evidence. The request above set forth embraces the testimony of the plaintiffs' witness Harris, who made an estimate of the timber taken from section 14 and lot 1 of section 10. The record shows that this testimony was not based upon an actual measurement of the timber cut and taken away from the plaintiffs' lands. It consisted of an estimate by the witness on section 14, made by a measurement of the stumps and estimated length of the trees cut, in connection with an examination and measurement of their tops, making certain allowances for the jump of trees in falling; and this, at best, was but an estimate of the witness of the quantity of timber taken. It is no answer to say that it was the best evidence that could be produced upon the subject. There was other testimony tending to contradict the conclusions and estimate made by this witness, and we do not think that the court would have been warranted in giving this estimate to the jury as undisputed evidence of quantity in the case. The extent of the trespass on lot 1 of section 10 was still more inconclusive. The distance was about 40 rods from the lake shore to the boundary of lot 1 of section 10, over which the road was cut. A similar estimate was there made, and

the quantity on the logging road ascertained was 3,650 feet. At the landing the timber had been cut away, many of the stumps dug up and removed, many of them not found, the quantity of land there, being about two acres, was ascertained by pacing, and the quantity of timber taken was estimated by comparison with other timber growing in the vicinity. This landing was near the mouth of the creek. The witnesses who examined it had never been there before, and had no knowledge of the quantity of timber originally standing thereon, and it was a matter of judgment only as to whether the amount of the timber there originally standing could be ascertained by comparison with other timber standing in the vicinity. Whether the standing timber was uniform in that vicinity was a question upon which the witnesses did not agree. We think the court did not err in refusing to give this request to the jury. The court did call the attention of the jury to all the evidence in the case upon the subject.

The remaining requests to charge relate to the subject whether this trespass was casual and involuntary, and the attention of the jury was challenged to certain testimony introduced by the plaintiffs in the case upon that subject. Some of the requests refer specifically to section 10. As the finding of the jury was that the trespass upon section 10 was not casual and involuntary, but wilful, manifestly the plaintiffs were not prejudiced by the refusal to give these requests. Those relating to section 14 were refused by the court largely upon the ground that they laid special stress upon particular evidence and were argumentative, as stated by the court in its reasons for refusing to grant a new trial. The charge of the court followed very closely the law as laid down by this court in *Michigan Land & Iron Co.* v. *Deer Lake Co.*, 60 Mich. 143 (27 N. W. 10, 1 Am. St. Rep. 491). This is conceded by plain-

tiffs' counsel, but it is contended that the case just referred to is not the law upon the subject at the present time, and that the correct rule is that stated in *Longyear* v. *Gregory,* 110 Mich. 277 (68 N. W. 116), and *Bockes* v. *A. McAfee & Son Co.,* 165 Mich. 7 (130 N. W. 313). A perusal of the charge, as given, satisfies us that the case was properly submitted to the jury upon all these questions. The court charged the jury, among other things, as follows:

"The burden of proof in this case is upon the plaintiffs to maintain their cause of action by a fair preponderance of the evidence. As I have said, there are some undisputed questions of fact. In view of the undisputed questions of fact, it becomes your duty to find a verdict in favor of these plaintiffs. The only question upon that point is as to the amount of damages; that is a disputed question of fact to be determined by you. There is a dispute in the evidence here as to what the damage is that these plaintiffs sustained. You will take all the evidence in the case and consider it fairly and dispassionately and arrive at your verdict as to what this testimony shows by a fair preponderance of the evidence is the amount of damage which these plaintiffs have sustained by reason of the trespass which the undisputed evidence in this case shows has been committed on the lands in question. * * *

"I charge you that, in determining the question of whether the trespass was casual and involuntary, this is an affirmative defense, and the burden of proof shifts to the defendants to show by a fair preponderance of the evidence that such trespass was casual and involuntary. * * *

"I charge you there must be some evidence in the case of wilfulness, wantonness, or evil design on the part of any defendant held liable under the statute for treble damages; that is, in order to hold that such trespass was not casual and involuntary, there must be some evidence in the case of wilfulness, wantonness or evil design upon the part of any defendant so held. In order to so hold defendants McRae for treble damages there must be evidence of wilfulness, wanton-

ness or evil design upon the part of such defendants; and also in order to so hold defendant Francis there must be evidence of wilfulness, wantonness, or evil design upon the part of defendant Francis. Negligence alone is not sufficient to create liability in a case of this kind. Even if the defendants were negligent, that alone would not be sufficient to make them liable for treble damages; there must be active misconduct.

"Now, gentlemen, it appears from the evidence in this case that the trespass upon section 14 was committed while defendants McRae were logging the northwest quarter of section 14 in question, and that they had let a contract to defendant Francis to do this logging. The defendant Francis went there and started to do the logging in question, and it appears that while doing that logging on the portion of section 14 that he was to do the logging upon he went over the line and trespassed upon the land which belongs to the plaintiffs in section 14. In this connection I charge you that in trespassing upon the lands of plaintiffs in section 14, if defendant Francis honestly believed he was on the lands of defendants McRae, then he cannot be held liable for treble damages for such trespass, nor can the defendants McRae be held liable for treble damages if they honestly believed that defendant Francis was cutting upon their lands. * * * All of the defendants deny that they wilfully or intentionally committed any trespass. * * * It will be for you, under all the circumstances as disclosed by the testimony in this case, to arrive at your verdict and conclusion as to whether or not the defendants McRae or the defendant Francis, or either of them—whether or not this trespass so far as it applies to them was casual and involuntary. You will take into consideration all of the testimony introduced upon that subject, gentlemen, and considering that testimony fairly and dispassionately, decide for yourselves whether or not the defendants McRae have by a fair preponderance of the evidence shown that the trespass which was committed was casual and involuntary on their parts, and also, with regard to Mr. Francis, you will consider all of the testimony and arrive at your conclusion as to whether or not the trespass which

was committed was casual and involuntary on the part of Mr. Francis."

We are of opinion that the charge of the court was warranted by the decision of this court in *Michigan Land & Iron Co.* v. *Deer Lake Co., supra,* and that the rule stated in that case has not been departed from by this court.

The case of *Longyear* v. *Gregory, supra,* was peculiar in its facts and circumstances. There the defendants, having a contract to lumber the southeast quarter of the northeast quarter of section 8 in a certain township, which it will be observed was a single 40, cut the timber not only upon that forty, but also from the southwest quarter of the northeast quarter, which belonged to the plaintiffs. It was very apparent to the court in that case that having permission to cut upon 40 acres of land gave them no right to cut over 80 acres of land, and that they must have known that they were exceeding the acreage to which they were entitled, and this court said:

"Not only did the defendants cut the timber from the southwest quarter of the northeast quarter, which belonged to the plaintiffs, but they also cut it from the southeast quarter of the northeast quarter. An inspection of their bill of sale would have indicated to them that they had no right to cut the timber from both of these 40's. Neither would it require a great amount of experience in the woods to indicate they had no right to cut over 80 acres of land when they had title to but 40 acres. The record also discloses that when Mr. Lewis, acting for the plaintiffs, visited them, a large quantity of posts cut from this land were still on the land; other portions of the timber were near by, on an adjoining description; and, after they knew the title to the lumber and timber was not in them, the defendants shipped it away, and appropriated the proceeds to their own use. It cannot be the law that no degree of care is required of one who goes on land to cut timber, or that he may recklessly, and without trying to ascertain the facts, cut and

carry away timber, and then say that the owner, who may have wanted to keep his timber, must content himself by receiving as his damages only what the timber was worth on the land. It was to meet such cases as the one at issue that the statute was passed."

In the instant case the defendants owned and had a right to cut upon the northwest quarter of section 14. By reason of the lines not being extended upon the east and south of this quarter section, and after making certain measurements by way of survey, they proceeded to cut, and in doing so cut over the lines upon the east and south. We think that under the evidence and questions submitted to the jury it was for them to say whether the trespass upon section 14 was casual and involuntary, or that the defendants had probable cause to believe that the land on which such trespass was committed was their own under the provisions of section 11205, 3 Comp. Laws (3 Comp. Laws 1915, § 13375).

Complaint is made by appellants because the court submitted the trespass on lot 1, section 10, and that on section 14 separately, and that one rule should govern the entire trespass. We think there was no error here. The defendants never claimed any rights on section 10. They knew they owned no timber there. While on section 14 they did own a quarter section. We think that the court properly submitted that question.

We agree with the circuit judge wherein he states in his reasons for refusing to grant a new trial that:

"The verdict was not against the weight of the evidence in any particular, either as to the trespass upon section 14 or in any other manner. The amount of the verdict upon each item was sustained by evidence in the case. This applies to the entire trespass. The newly discovered evidence is in no manner sufficient to justify the granting of a new trial."

It is a sufficient answer to the question of newly

discovered evidence to say that the affidavit of the proposed absent witness William J. Weston was not produced. As to what he would have testified to upon a new trial the court was not informed except by hearsay. The affidavit of Mr. Weston was not furnished in support of the motion, but merely the affidavits of the plaintiff and their counsel. They are hearsay, and were not proper affidavits on which to base an order for a new trial. *Hammond* v. *Pullman,* 129 Mich. 567-569 (89 N. W. 358).

An examination of the entire record in this case leads us to the conclusion that there was no prejudicial error upon the trial of the case, and for that reason the judgment of the court below should be and is affirmed.

KUHN, OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred. PERSON, J., did not sit.