FORSYTH *v.* NOSTRAND.

1. SET-OFF AND RECOUPMENT — ORAL CONTRACTS — CONFLICTING CLAIMS.

In an action for money due, where defendant admitted his liability but claimed the right to recoup under an oral contract, the court below was in error in withdrawing from the jury the subject of recoupment because the plaintiff and defendant did not agree upon what the contract was.

2. TRIAL—INSTRUCTIONS—REQUESTS TO CHARGE.

There was no error in refusing requests to charge, where the charge as given covered the substance of the requests.

3. EVIDENCE—CROSS-EXAMINATION—WITNESSES.

Where plaintiff sued defendant for only one item, on account of one real-estate transaction, cross-examination of defendant as to money which he received from parties not named in the record, and for transactions entirely outside of the case, which might leave the impression in the minds of the jury that defendant was withholding large sums of money due the plaintiff outside of and beyond any claims made by the pleadings in the case, was prejudicial error.

4. TRIAL—APPEAL AND ERROR—PREJUDICIAL ERROR.

While the answers of the jury to special questions were adverse to the claim of defendant and virtually disposed of it, where it cannot be said that had the evidence as to the recoupment been received, and the cross-examination properly restricted, the same result would, have been reached by the jury, the judgment of the court below will be reversed.

Error to Wayne; Murphy, J. Submitted April 18, 1918. (Docket No. 86.) Decided June 3, 1918.

Assumpsit by Henry I. Forsyth against John R. Nostrand for an amount due on commissions earned jointly by plaintiff and defendant. Judgment for plaintiff. Defendant brings error. Reversed.

*Gray & Gray* and *Allan H. Frazer* (*Edwin C. Lewis,* of counsel), for appellant.

*Robert M. Brownson,* for appellee.

STONE, J. This action is upon a special count in assumpsit for recovery of $2,500 due to the plaintiff as the plaintiff's one-half of $5,000, paid to defendant by Gray & Gray on account of a commission for the joint efforts of the plaintiff and defendant as real estate brokers, in negotiating a 99-year lease for the McKinstry estate, on property situated on the northeast corner of Woodward and Jefferson avenues, in the city of Detroit. The common counts were added to the special count; but in plaintiff's amended bill of particulars the claims of the plaintiff under the common counts were restricted to the item as set forth in the special count, and interest thereon. The defendant admitted that he owed the plaintiff the item of $2,500 referred to, and the interest thereon; and the contested matters in the case arise out of a claim of set-off and recoupment interposed by the defendant. The plea was the general issue, with a notice the substance of which, after claiming a set-off for moneys due that had been earned by the parties hereinafter named, the defendant claimed, as follows:

"That the plaintiff and defendant, prior to the time the said suit was instituted, made and entered into contract arrangements whereby one William P. Merry and one William L. Dodds were brought into the defendant's office by the plaintiff and were given desk room and certain office accommodations at the joint expense of the plaintiff and the defendant, the said Merry and the said Dodds having, before coming into the office, made financial arrangements with the plaintiff as to compensating the plaintiff for such desk room aforesaid, to which financial arrangements the defendant was not a party; and, in consideration of the consent of the defendant that the said other occupants be brought into the office and have such desk

room and office accommodations in part at the expense of the defendant as aforesaid, the plaintiff agreed to pay to the defendant a sum equivalent to one-quarter of all of the commissions and profits earned by said other occupants of the office during their stay therein, such sums, equivalent to one-quarter of such commissions and profits respectively, to be due and payable from the plaintiff to the defendant as such commissions and profits should be respectively due and payable to such other occupants respectively; and further, that the said William P. Merry and the said William L. Dodds came into the said office of the parties under the said arrangements, and earned large commissions and profits during the period of such occupancy.
* * *

"Whereupon it became and was the duty of the said plaintiff to pay to the defendant, sums of money equivalent to one-quarter of such commissions so earned by the said occupants of the office respectively, and that large sums of money have accrued to the defendant and have become due and payable in accordance with the terms of the said contract with the plaintiff; but the plaintiff has made arrangements with the said occupants of the office, and particularly with the said Merry, without the consent or approval of the defendant, whereby commissions and profits made and earned by the said occupants of the said office, and particularly by the said Merry, have been postponed, released, collusively reduced in amount, and otherwise manipulated for the purpose of improperly and unlawfully preventing the falling due of payments under the said contract arrangements between the plaintiff and the defendant, collusively and fraudulently manipulating the amounts upon which the sums payable to the defendant under said arrangements were to be computed and otherwise unlawfully affecting and manipulating the contract rights of your petitioner in the premises—all of which the defendant avers constitutes a breach of the contract of the plaintiff aforementioned and a breach of his obligation to pay to the defendant sums equivalent to one-quarter of such commissions and earnings; and that the defendant has often requested the plaintiff to pay to him, the defendant, sums equivalent to one-quarter of such com-

missions and earnings as originally made and earned
without regard to such improper and collusive post-
ponements, releases and manipulations as they were
properly due and payable on account of said commis-
sions and earnings as originally earned, made due and
payable, but so to do, said plaintiff has neglected and
refused and still does neglect and refuse, to the dam-
age of the defendant of five thousand dollars ($5,000).

"That the defendant under the evidence to be in-
troduced in support of the above facts and circum-
stances, will insist upon a recoupment and set-off to
the extent and amount so due to him from the plain-
tiff, as aforesaid—this in addition to the defenses here-
tofore set forth under the defendant's notices hereto-
fore filed in said cause under his said plea of the gen-
eral issue."

Under his notice of set-off the defendant filed a
lengthy bill of particulars showing numerous different
transactions in which it was claimed he was entitled
to commissions earned by the said Merry, aggregating
$4,600.

It was the contention of the plaintiff with reference
to the aforesaid claim of the defendant as to terms of
the contract, that he agreed with the defendant, in
October, 1910, that the latter should receive one-
quarter of any commissions paid by Merry to the
plaintiff, out of commissions earned by Merry in the
leasing of property; that this contract was in effect
for a few months only; and that on or about April 22,
1911, the contract was modified so that thereafter the
defendant was to receive only one-half of 15% of any
of Merry's earnings in the making of leases; and it
was the further position of plaintiff that subsequent to
April, 1911, namely, upon August 12, 1911, there was
still another modification by which it was agreed be-
tween the parties that thereafter the Merry commis-
sions were to be entirely eliminated, except that one-
half of the so-called Faltis commission, amounting to

201—Mich.—36.

$25 per month, was to be turned in by Merry upon payment of office rent, and that this $25 per month was to be in full settlement of Merry's earnings, or the defendant's share of it.

It was the claim of the defendant that no such modifications were ever made, and he contended upon the trial that the first agreement made was maintained throughout, without modification in any manner.

Upon the trial of the case the learned circuit judge appears to have been of the opinion that because the plaintiff and defendant did not agree upon the terms of the contract there could be no recoupment. The trial resulted in a verdict and judgment for the plaintiff for the full amount of his claim of $2,500 and interest, the claim of the defendant being entirely rejected. The defendant has brought the case here for review, and error is assigned upon the ruling of the court withdrawing the matter of recoupment from the jury, and also in permitting certain cross-examination of the defendant; also in refusing to charge the jury as requested.

It should be borne in mind that the plaintiff sued the defendant for only one item of $2,500 on account of one real estate transaction, which claim was admitted by defendant. The notice of set-off and recoupment of the defendant embraced certain specified claims or transactions easily understood and pointed out. However, upon cross-examination of the defendant the following occurred, relating to matters wholly outside of the issue in the case:

"*Q.* Why didn't you give him a part of the commission on the property next door to the Goldsmith property, the Smith property?

"*A.* He was not in that, he had nothing to do with it.

"*Q.* You got the commission of $3,500 out of that, and a commission of $7,500 out of the Metropole Hotel deal?

"*A.* No, sir.

*"Defendant's Counsel:* I object to these questions and the testimony, as it is absolutely foreign to this case and it is immaterial.

*"Plaintiff's Counsel:* I think in view of the claims made in this case, I have a right to go into it, their relations, on cross-examination. This witness comes along and claims certain commissions on certain deals because he says he has an interest in them. I want to know how they conducted that business and on what grounds the claims are founded.

*"The Court:* I think a wide latitude should be allowed. The pending question may be answered. The jury here have to depend upon the oral testimony of contending parties for the purpose of ascertaining the truth on the vital issues of the case, and I think a wide inquiry ought to be permitted on cross-examination.

*"Q.* Didn't you have a deal whereby you negotiated a lease on the Metropole Hotel, owned by Judge Mandell and his mother, to David Stott, where the commission was $5,000, and didn't Mr. Forsyth participate in that deal?

*"Defendant's Counsel:* Objected to.

*"The Court:* That may be answered.

*"Defendant's Counsel:* Exception.

*"A.* I did have a deal and Mr. Forsyth absolutely did not have anything to do with it.

*"Q.* Didn't you make a deal with the Cadillac Hotel and earn a commission of $7,500, and wasn't Mr. Forsyth interested in that?

*"Defendant's Counsel:* Objected to as incompetent and immaterial.

*"The Court:* It may be answered.

*"A.* He was not interested in that, absolutely none.

*"Defendant's Counsel:* I move to strike out that testimony, as it appears that Forsyth had nothing to do with that deal.

*"The Court:* I think it may stand.

*"Q.* Didn't you have such a deal in the Bamlet building; didn't you make a deal with the Bamlet building, a lease, a commission of $4,500, in which Mr. Forsyth was interested?

*"Defendant's Counsel:* Objected to.

*"A.* He was not interested.

"*Q.* Didn't he do any work on it?

"*A.* Absolutely none.

"*Q.* There was such a deal?

"*A.* I made such a deal.

"*Defendant's Counsel:* Objected to as incompetent and immaterial.

"*The Court:* The answer may stand.

"*Defendant's Counsel:* Exception.

"*Q.* Didn't you make a deal next door to the Liggett property?

"*A.* Yes, sir, and J. Henry Smith and Conrad Smith.

"*Q.* Was there not a commission of $3,500, and was not Forsyth interested in that?

"*Defendant's Counsel:* Objected to.

"*The Court:* It may be answered.

"*A.* The commission—

"*Defendant's Counsel:* I object to it as a double-barreled question.

"*The Court:* It is a double question.

"*Q.* Did you have such a deal over there?

"*Defendant's Counsel:* Objected to as incompetent and immaterial.

"*The Court:* It may be answered.

"*Q.* Did you have any deal over there?

"*A.* I had a deal for 60 feet on Gratiot Ave.

"*Q.* Is that the deal on which there was a commission of $3,500?

"*A.* No, sir.

"*Defendant's Counsel:* Objected to as incompetent and immaterial.

"*The Court:* It may be answered.

"*Defendant's Counsel:* Exception.

"*A.* I don't remember, I think it was a one thousand dollars.

"*Q.* Didn't Forsyth help you and participate in that?

"*A.* No, sir. Forsyth was not in it for a minute and knew nothing about it.

"*Defendant's Counsel:* Objected to as bringing in a whole lot of figures which are not really vital to the case here.

"*Plaintiff's Counsel:* We want to know how much good faith you have in this case, Mr. Frazer.

"*Defendant's Counsel:* I object to that.

"*Plaintiff's Counsel:* It was called out by him.

*"Defendant's Counsel:* No, and I move to strike it out from the record.

*"The Court:* I think this is all in evidence, it will be stricken out.

"Q. You consider you have treated Forsyth fairly?

"A. I know I have, yes, sir.

"Q. You think he has not treated you fairly?

"A. Yes, sir, I do think he has not treated me fair."

The following special questions were submitted to the jury by consent of counsel, and were answered by the jury as follows:

1. "Do you find from the testimony in this case that the original agreement between Forsyth and Nostrand was to the compensation to be paid Nostrand on account of Merry coming into the office, was that Forsyth was to pay Nostrand one-fourth of the commissions earned by Merry so long as Merry remained in the office?"   Answered: "No."

2. "Do you find from the testimony in this case that the original agreement between Forsyth and Nostrand as to the compensation to be paid Nostrand on account of Dodds coming into the office, was that Forsyth was to pay Nostrand one-fourth of the commission earned by Dodds so long as Dodds remained in the office?"   Answered: "No."

3. "Do you find from the testimony in this case that the original agreement between Forsyth and Nostrand was that Forsyth was to pay Nostrand one-half of the fifty per cent. commissions which Forsyth received in cash from Merry?"   Answered: "Yes."

4. "Do you find from the testimony in this case that Nostrand consented to a modification of the original contract, by which modification Forsyth was to pay one-half of the fifteen per cent. net commission which Forsyth received in cash from Merry so long as Merry remained in the office, and in addition, one-half of the twenty-five dollars which Forsyth received in cash from Merry out of the so-called Faltis commissions for the period from April 22, 1911, to August 12, 1911?"   Answered: "Yes."

5. "Do you find from the testimony in this case that the agreement between Forsyth and Nostrand from August 12, 1911, to October, 1912, was that the twenty-

five dollars paid to Merry and collected by Forsyth in cash each month out of the commissions due to Merry from the so-called Faltis deal, should be applied toward the payment of the rent of the office in the Home Bank building as full compensation to be received for the office accommodations furnished Merry so long as Merry remained in the office?" Answered: "Yes."

1. Referring to the subject of recoupment, the ruling of the court is sought to be justified by counsel for the plaintiff upon the authority of *Sharpless Separator Co.* v. *Brown,* 174 Mich. 16.

In the recent case of *American Varnish Co.* v. *Furniture Co.,* 199 Mich. 316, we had occasion to refer to that case, and we held that it was improper to take from the jury the question of recoupment, simply because the parties did not agree upon what the contract was; and we there held that the court should have submitted the question to the jury, for them to determine what the terms of the contract were. The mere fact that the plaintiff and defendant did not agree upon all the terms of an oral contract does not excuse the court from submitting the question to the jury to determine what the contract was. Then, if the breach springs out of the contract which the jury find to exist, the doctrine of recoupment may be applied. The court withdrew, in the instant case, the subject of recoupment from the jury. We think this was error.

2. A reading of this record discloses the fact that there was a sharp conflict between the testimony of the plaintiff and that of the defendant as to what the contract really was. The court, after instructing the jury that there was an oral contract between these parties, the terms of which should be found by them, and after giving them full instructions as to the burden of proof in the case, referred to the conflict in testimony as follows:

"There is very much conflict in the testimony here, gentlemen. This testimony, I think it can be said, in some respects, is so much in conflict that it is impossible of being reconciled at all. Someone is certainly, at least, very grievously mistaken as to some phases of this case. Now, where such a sharp conflict as that arises, the duty resting upon the jury becomes all the greater, because the duty to rest your verdict, to plan your conclusion, upon the truth becomes all the clearer."

Certain requests to charge were made by defendant's counsel. We have examined them, as well as the charge of the court, and are of opinion that the substance of the requests was given, and that there was no error in that regard.

It is strenuously urged by defendant's counsel that, the case being so close a one upon the facts, there was prejudicial error in permitting plaintiff's counsel to cross-examine defendant as to commissions which he had received aggregating upwards of $21,000, which were entirely outside the record in this case.

It is the claim of plaintiff's counsel that defendant's counsel had "opened the door" for this sort of cross-examination. We are unable to agree with plaintiff's counsel upon that point. Nowhere in the record is there any question by defendant's counsel asking plaintiff why he had not paid defendant any item of money not claimed in the notice of set-off and recoupment. Nowhere does it appear that there was any question by defendant's counsel whether the plaintiff did not owe the defendant sums of money not mentioned in the pleadings. It is urged by defendant's counsel that these questions were all answered in the negative, and therefore that they did not injure the defendant; and *Johnson* v. *Grondin,* 170 Mich. 447, 466, and *Connor* v. *McRae,* 193 Mich. 682, 690, are cited. These cases are not controlling here.

It will be noted that in the instant case counsel were

permitted to pursue the examination, to the extent of showing the amount of money which the defendant had received from parties not named in the record, and for transactions entirely outside of the case. There was testimony that in their joint transactions they—the plaintiff and defendant—divided the proceeds, as one termed it, "fifty-fifty." It is claimed by defendant's counsel that this examination left the impression in the minds of the jury that the defendant was withholding large sums of money due the plaintiff outside of and beyond any claims made by the pleadings in the case. There is much force in this claim.

While the cross-examination of witnesses is a matter resting largely in the discretion of the trial court, and while that discretion when not abused will not generally be disturbed, and while the rule in this State has generally permitted a liberal cross-examination, yet under the peculiar circumstances of this case, and especially owing to the fact that the plaintiff nowhere made any claim, or claims for any money received by the defendant in either of the transactions named in the cross-examination, and the good faith of the witness as a party was challenged, it seems to us that the court should have restricted counsel in such cross-examination.

"It is a general rule that it is not proper for the purpose of creating distrust of the integrity of a witness, and thereby disparaging his testimony, to show on his cross-examination particular acts of alleged misbehavior and dishonesty in relations to matters foreign to the issues involved in the trial." 3 Enc. of Ev., p. 868.

In *Holbrook* v. *Dow*, 12 Gray (78 Mass.), 357, it was held that a party to an action who is called as a witness cannot be asked, on cross-examination, in order to affect his credibility, about his part in transactions irrelevant to the issue on trial. Counsel for defend-

ant have made an extensive extract from this opinion, to which we direct attention.

This court said in *People* v. *Pinkerton,* 79 Mich. 110, 113, 114, that

"Whatever latitude is proper in cross-examination to test veracity, it cannot properly introduce independent issues against the person who is both witness and respondent. * * *

"It raises false issues, and is likely to lead a jury to try the accused of what is not in the information."

We are of the opinion that the latitude given to this cross-examination was prejudicial to the defendant and his rights under the circumstances.

While it is true that the special answers of the jury virtually disposed of the defendant's claims, we cannot say that had the evidence relating to the recoupment been received, and the cross-examination of the defendant properly restricted, the result would have been as found by the jury. The ruling of the court upon the subject of recoupment resulted in the exclusion of a number of items in the bill of particulars of defendant from the consideration of the jury, which is made the basis of a number of assignments of error. They are disposed of in what we have said upon the subject of recoupment.

For these errors we are constrained to reverse the judgment below and grant a new trial. The appellant will recover his costs in this court.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, BROOKE, FELLOWS, and KUHN, JJ., concurred.