THE PEOPLE v. JENNIE PINKERTON.

*Criminal law—Keeping house of ill fame—Evidence.*

1. Act No. 34, Laws of 1887 (amendatory of How. Stat. § 9286), making the keeper of a house of ill fame, resorted to for the purpose of prostitution or lewdness, guilty of a felony, is not aimed merely at unchastity, and is intended to reach only such houses as are sufficiently notorious to have acquired that specific reputation, so that they are offensive as nuisances, in which

category they are legally classed, in the vicinage, small or large, where the evil offends; and, in addition· to *evil report*, it must be shown to be attended with the *actual* resort of evil persons for the lewd purposes named in the law.

2. It should be hardly necessary to say that a house visited, or even resorted to, by no more than one person, cannot come within the statute.

3. It is necessary, under the statute, to show ill repute in the vicinity. Certainly, no less certainty of ill repute of a house is needed than would show it of a person. Rumors at a distance do not make up reputation.

4. All testimony, even of conviction, and not merely of accusation, of crimes or misconduct not in issue, is improper. It raises false issues, and is likely to lead a jury to try the accused of what is not in the information. This doctrine is elementary, and has been too frequently held to need citation.

So *held*, in a prosecution for keeping a house of ill fame, where the people were allowed to prove statements made by the respondent to the effect that her reputed husband, who was not living in the house in question, was not married to her, and to prove her arrest many years before on a charge of prostitution:

5. In a criminal case, we do not think it competent to compel a respondent, who is sworn as a witness, to answer questions irrelevant to the issue, having a tendency to bring in other charges. Whatever latitude is proper on cross-examination to test veracity, it cannot properly introduce independent issues against the person who is both witness and respondent.

6. It is scandalous to use means to persuade persons into crime, and, whether respondent (a woman in this case) is reprobate or not, justice is not respected when it disregards its own safeguards against oppressive prosecution.[1]

Error to Kalamazoo. (Buck, J.) Submitted on briefs October 24, 1889. Decided December 28, 1889.

Respondent was convicted of keeping a house of ill fame, and sentenced to two years' imprisonment in the Detroit House of Correction. Judgment reversed, and new trial ordered. The facts are stated in the opinion.

*Hampden Kelsey*, for respondent.

---

[1] See *People v. McCord*, 76 Mich. 200.

*S. V. R. Trowbridge,* Attorney General, and *George P. Hopkins,* Prosecuting Attorney, for the people.

CAMPBELL, J. Respondent was convicted under an information charging her with keeping a house of ill fame, resorted to for the purpose of prostitution and lewdness. She was at once sentenced to imprisonment in the Detroit House of Correction for two years. The case is brought here, by writ of error, on exceptions, and several errors are presented for our review. As the case can be dealt with by classing the questions together, we shall refer only to such as seem most material.

In view of some features of the argument, it seems proper to remark that the respondent was not on trial for anything but a specific statutory crime; and it is quite immaterial whether she is or not an exemplary person. When on trial for any charge, that is the only matter that should be allowed to enter into consideration. She is entitled to a fair trial on that alone, and is entitled, on that trial, to have decent treatment from all persons engaged in the prosecution, and to be protected carefully against invasions of legal right.

The only two issues which were pertinent were—

1. Whether she kept a house of ill fame.
2. Whether it was resorted to for purposes of prostitution and lewdness.

Under the first head, it must be carefully noted that this statute is not aimed merely at unchastity. Such a house, if usually, is not necessarily, kept by persons who are themselves given over to promiscuous intercourse. It is intended to reach only such houses as are sufficiently notorious to have acquired that specific reputation, so that they are offensive as nuisances, in which category they are legally classed, in the vicinage, small or large, where the evil offends; and, in addition to evil report, it

must be shown to be attended with the actual resort of evil persons for the lewd purposes named in the law. If there is individual misconduct of any less general and public character, it must be reached in some other way. And the utter destruction of reputation that justly reaches persons guilty of such an offense as is charged is reason why no person should be convicted of it without full legal proof. It is a charge which, if false, is a cruel one; and while the law has no particular regard for actual criminals, it protects, or should protect, against false charges.

It is, or presumably is, singular that on this trial no one gave any definite testimony of the ill repute of the house, except the police officers, and those who were acting with them, and that the only evidence identifying resort to the house for evil purposes, by any persons known or pointed out, was of a person who was in concert with the police, and who went for the purpose of furnishing proofs. It should be hardly necessary to say that a house visited, or even resorted to, by no more than one person, cannot come within the statute.

Among other testimony which we think was improperly let in was the testimony of various persons who claimed that she made statements to them about her husband, who was not living in this house, and of her arrest, many years before, on a charge of prostitution. All testimony, even of conviction, and not merely of accusation, of crimes or misconduct not in issue, is improper. It raises false issues, and is likely to lead a jury to try the accused of what is not in the information. This doctrine is elementary, and has been too frequently held to need citations. Some of this testimony was subsequently stricken out; but the circumstances were as improper as the fuller testimony, and it cannot heal the

79 MICH.—8.

error to strike out testimony once received under objections, if it has a serious tendency. This same remark will apply to misconduct not criminal; and, in a criminal case, we do not think it competent to compel respondent, who is a witness, to answer questions irrelevant to the issue, having a tendency to bring in other charges. Whatever latitude is proper in cross-examination to test veracity, it cannot properly introduce independent issues against the person who is both witness and respondent.

The charge, which, in its general features, was properly qualified, failed to meet some of the questions which were brought to notice.

The court did not call the attention of the jury sufficiently to what is meant by "ill fame." We think it was necessary, under the statute, to show ill repute in the vicinity. Certainly, no less certainty of ill repute of a house is needed than would show it of a person. Rumors at a distance do not make up reputation. This is more particularly worthy of regard here because the only ill repute shown is given by the police officers; and they are no better witnesses of repute than other persons, even where impartial, as they do not seem to have been here. They do not give very definite facts as to ill repute; but, if they heard it in the neighborhood, it is singular that no one else was called. The court, however, did not require any proof of local repute to be given.

The court, in reference to the witness who was, or was claimed to have been, sent to entrap respondent, did not meet the points fully. As already stated, this man was the only person identified by name or otherwise as having been at the house for evil purposes. The court did not charge that a single act was not enough, except in connection with the further fact that this man was employed

to entrap respondent. The importance of showing that the house was "resorted to," which means something of a common occurrence, was entirely overlooked.

We have had doubt whether the case should not have been taken from the jury, but we shall not now pass on that question. It is certainly a very peculiar record, which is not creditable to the police, and which indicates a harsh and vindictive temper in the methods of prosecution, which had no tendency to bring credit on the persons engaged. It is scandalous to use means to persuade persons into crime; and, without what clearly appears to have been such collusion, we do not think the record shows very much in the way of testimony, if it does anything.

Whether this woman is reprobate or not, justice is not respected when it disregards its own safeguards against oppressive prosecution.

We think a new trial should be granted, and that respondent should be admitted to bail in $1,000.

CHAMPLIN, MORSE, and LONG, JJ., concurred.

SHERWOOD, C. J., (dissenting). The respondent, in the month of March last, was tried and convicted, in the Kalamazoo circuit court, of keeping and maintaining a house of ill fame in the city of Kalamazoo, resorted to for the purpose of prostitution and lewdness, and was sentenced to the Detroit House of Correction for the period of two years. She now asks a review in this Court of the proceedings had against her at the circuit resulting in her conviction. The record is very full; the bill of exceptions containing the substance of all the testimony given at the trial. Forty-two errors are assigned by defendant's counsel, and all are relied on for reversal.

The first exception taken relates to the exclusion of one of the persons called as a juror. On being examined

by the prosecuting attorney, he stated he had heard of the case; heard several speak of it, but did not know as he had formed an opinion in the matter from anything he had heard; that from what he had read, he thought he might have some opinion in reference to it; that he still had that opinion, and thought it would take some evidence to remove it. He was then challenged by the prosecuting attorney for cause, and the challenge was sustained. There was no error in this. The juror was incompetent, under the previous decisions of this Court.

The next four assignments relate to what occurred and what was said in the house of Mrs. Pinkerton, and what the witnesses observed while they were in there; and we see no objection to these rulings of the court.

One Van Zee was examined as a witness on the part of the defendant. It appears he was one of the persons who, it was alleged, was in the habit of visiting the house of Mrs. Pinkerton, and had criminal intercourse with her, and, at the request of the city marshal, assisted him in ascertaining the true character of the house and its inmates, and the purposes for which it was kept; and it was claimed upon the trial that the witness was quite willing to give the marshal all the information he had upon the subject, and was willing to aid him in obtaining further facts, to be used in procuring the conviction of the respondent, upon condition that his visits at the house, and his previous association with Mrs. Pinkerton, should not be made known, and his venality exposed. He was at work, at the time, at the water-works in the city, where several other persons were employed; and he had several conversations with these parties, and claimed to have told them what part he took in aiding the marshal in making discovery of the criminality of the defendant. The defendant's counsel offered to show what was said to the witness by the parties to whom he narrated his

experience in the detective business, and the aid he gave the marshal. This was properly ruled out, when objected to. It was both irrelevant and hearsay. This ruling constituted the defendant's sixth assignment of error.

The errors assigned in No. 7 and to and including No. 19 all relate to the testimony offered by the people, or to questions put to the respondent, who voluntarily took the stand as a witness for herself, and her other witnesses, upon cross-examination, tending to show the character of the house kept by Mrs. Pinkerton; her character for chastity, her unchaste and criminal conduct; the vileness of her life, and the vulgar and indecent language she used in the presence of others; her offenses against chastity, and her violations of the criminal laws of the State in that regard; the times and places when and where she had been arrested, charged with such offenses, and convicted and, imprisoned, and what she had said about it; her indecent and criminal conduct and conversation when under arrest and when in jail; the character of the persons who had been her associates, and of the company she had been accustomed to keep since arriving at the age of womanhood, for chastity; her marriage ventures; the character of the houses where she had lived, and the licentious habits and character of the men who were accustomed to visit such houses, and in what numbers; her own unlawful intercourse with such men; the licentiousness and baseness of their conduct and habits, and their criminal offenses against chastity while living with her; and the imprisonment they had undergone for the offenses they had committed, and what she said about them. This testimony was all offered for the purpose of showing her credibility as a witness, and the character of the defendant; that she was herself a prostitute, and used the house she kept for the purpose of prostitution. I think that it all tended to prove the charge

contained in the information, and the circuit judge committed no error in so ruling. This disposes of all the errors assigned upon the court's rulings in taking the testimony in the case.

At the close of the testimony, counsel for defendant presented nine requests and asked the court to give them in his charge. These requests are as follows:

"1. If the jury find that the respondent lived alone, and that the house was not the resort of lewd persons and prostitutes, then the respondent must be acquitted.

"2. In order to convict the respondent, the jury must find that she kept a house which had the reputation, in its neighborhood, of being a house of ill fame; and it must be shown and proved by the people that respondent's house was, at the time alleged, generally known in its neighborhood as a house of ill fame; and this fact must be shown by the evidence of the people living in the neighborhood of said house.

"3. The object of the statute under which this case is brought is to punish people who keep houses of ill fame, resorted to for the purpose of prostitution and lewdness to the annoyance of the neighbors; and, in order to convict, the jury must find from the evidence that the people of the neighborhood were annoyed by the reason of the respondent keeping such a house as is alleged in the information.

"4. In order to convict the respondent, it is necessary for the people to make out, beyond a reasonable doubt, that her house was a resort for prostitutes and lewd persons, and was a house of ill fame. Now, the fact that one man, or even more than one man, went to her house for the purpose of having sexual intercourse with, and did have such intercourse with, her, would not be sufficient to convict the respondent of the offense charged in the indictment.

"5. If the jury shall find that the witness Gates entered into an arrangement with the witness Van Zee for the purpose of entrapping the respondent, and that such arrangement was carried out, then the jury should disregard the testimony of said Gates.

"7. It is against the policy of the law to use decoys, or hire any one to procure a crime to be committed; and,

if the jury shall find that the witness Van Zee went to Mrs. Pinkerton's house for the purpose of entrapping her, under an arrangement for that purpose, and did so entrap her, then the jury should scrutinize the evidence very closely, and give the respondent the benefit of every doubt.

"8. The jury are instructed that, under all the evidence in this case, the respondent ought not to be convicted.

"9. Under the information in the case, the respondent cannot be convicted for keeping a house of ill fame, resorted to for the purpose of prostitution and lewdness, simply because she is unchaste, lives by herself, and habitually admits one or many to an illicit intercourse with her.

"10. The jury are instructed that the evidence does not support the information and complaint in this case."

The court gave, upon his own motion, the following charge:

"Gentlemen of the Jury: The information in this case charges that on October 13, 1888, and for six months immediately previous, on divers days and times within said period, at the city of Kalamazoo, in this county, the respondent, Jennie Pinkerton, did willfully keep and maintain a certain house of ill fame, resorted to for the purpose of prostitution and lewdness.

"1. In order to convict the respondent, and entitle the people to a verdict of guilty, it is necessary for the people to prove, by evidence that satisfies the jury beyond a reasonable doubt,—

"a—That at some time within the period above-named, and at the place named, the respondent kept a house which was reported to be a bawdy-house.

"b—That said house was resorted to for the purposes of prostitution and lewdness.

"2. If the evidence in the case fails to show all those elements of the offense beyond a reasonable doubt, then it will be your duty to acquit the respondent. If the evidence in the case shows all those elements of the offense, beyond reasonable doubt, then it will be your duty to convict. The object of the law under which this case is prosecuted is to punish people who keep houses of ill fame, resorted to for purposes of prostitution and lewdness, both because of the annoyance to the

community in which they exist, and because the tendency of such houses is to corrupt public morals. It is therefore necessary, as I have already said, that it must be proven beyond a reasonable doubt that the respondent's house was of ill repute, in order to authorize a conviction of the respondent.

"3. It is not necessary, however, for the people to prove that this reputation of the house extended to all parts of the city, nor over any particular extent of territory, nor among any particular number of persons.

"4. If the house was commonly reputed in its neighborhood to be a bawdy-house, kept as a place of resort for purposes of prostitution and lewdness, then it is a house of ill fame; and, if this fact has been shown to your satisfaction, beyond a reasonable doubt, by the evidence in the case, then the first elements of the offense would be established.

"5. The second element of the offense which is necessary that should have been proven beyond a reasonable doubt, in order to convict the respondent, is that the house kept by the respondent was resorted to for the purpose of prostitution and lewdness. It is not necessary that any particular or great number of persons should have resorted to the house for the purpose of prostitution and lewdness, in order to make the respondent guilty of the offense.

"6. If the house was kept by respondent, and if it was a house of ill fame, and different men resorted to the house within the period named in the information for the purposes of prostitution and lewdness, and if you find these facts to be proven beyond a reasonable doubt, then you should find the respondent guilty.

"7. If, however, you should find it a fact that the only act of prostitution and lewdness committed in the house kept by the respondent was committed with the witness Van Zee, and that Van Zee was employed by the officers to go to the house for the express purpose of making a case against the respondent, then you should acquit.

"8. But if, as I have already said to you, it is proved beyond a reasonable doubt that Van Zee and other men visited the house for the purpose of prostitution and lewdness, and that it was a house of ill fame, then the respondent would be guilty of the offense, even though you should believe that Van Zee was employed to go to

the respondent's house, on one particular occasion, to make a case against her.

"9. In such case, you should consider the testimony of the fact that he was employed by the officers to go to the respondent's house to make a case against her, if, as I have said to you, you believe from the testimony that this was the fact, only as bearing on the credit to be given to any or all of the people's witnesses.

"10. If, however, you believe the testimony of the people's witnesses, and disbelieve the witness Van Zee, then the fact that he was paid money by the officers would be a fact of no consequence, so far as the guilt or innocence of the respondent is concerned. You would, in any case, be at liberty to consider this piece of testimony in considering the question who tells the truth in regard to the matter. But the respondent, if guilty at all, would be neither less nor more guilty if money was paid by the officers merely to secure evidence of the guilt, and not for the purpose of manufacturing such evidence.

"11. In considering the question of the credibility of the witnesses sworn in the case, you are the sole and exclusive judges of the credibility of the witnesses, and the weight to be given to the testimony of any or all of them.

"12. When witnesses directly contradict each other, then, in deciding which should be believed, you would naturally and properly take into account the character and standing of each, as shown by the testimony, if the testimony shows this, the reasonableness or unreasonableness of the story told by each, the appearance of the witnesses upon the stand, whether either is corroborated or contradicted by the other testimony in the case, whether either of them has made statements contradictory or inconsistent with his testimony, and any and every other fact and circumstance bearing on the credibility, or want of, of either."

It clearly appears from this charge that the theories of both parties were fairly submitted to the jury, including the defendant's claim of conspiracy, and what was necessary to constitute a house of prostitution, and all that was necessary or proper to be given, contained in the defendant's requests, was included in the charge of the court.

The case was a proper one for the jury. There was testimony given on both branches of the charge made against the defendant sufficient, if believed, to sustain the verdict against her.

The marshal testified that he had known defendant a number of years; that she was in jail when he was sheriff, and he first saw her there; knew the house where she now lives; had seen men going in her house late at night; had seen her open the door, to let them out, when they left, in her night-clothes; knew that a prostitute was in the house with defendant, by the name of Russell or Baldwin; that she went by both names; that he followed one man going in the house; that the man and defendant went up-stairs into a bedroom together; heard them having vulgar talk up there; that they finally went into bed together, and when he left the house defendant came to a door, in her night-clothes; that witness was there several times afterwards, and was at her bedroom at another time, when defendant had a man in bed with her; that he found, at one time, a young man by the name of Van Zee in bed with her; witness then had some talk with defendant, when she told him she was running a quiet house, and was not giving much trouble; that she told him she did not think it would hurt anybody, if the married men did come and sleep with her, if their wives did not know it. The marshal further testified that he knew the reputation of the house in the vicinity in which it was located, and it was considered a house of ill fame by the public generally.

William Hare testified, on the part of the people, that he had known defendant three or four years; that he was with the marshal when Van Zee was found in bed with the defendant; that he had a conversation with her while she was sitting on the side of the bed; that she was drinking whisky that Van Zee left; that she told the

witness that she kept a pretty quiet house, and not a great many came there; that there were but few who knew she kept that kind of a house; that she thought the police ought not to find fault with her, as long as the men's wives did not know it. Witness further testified that he had seen men coming out of the defendant's house, at different times, at 9 and 10 o'clock at night, and sometimes later; that he knew the reputation of defendant's house in the vicinity, and it had the reputation of being a house of ill fame.

Witness Boekeloo also testified that he had known defendant ten years; that he was in the employment of the police department of the city; that defendant was in jail ten years ago; that she was then arrested as a common prostitute.

Mr. McSweeny testified that he owned the house Mrs. Pinkerton lived in; that it bore the reputation of a house of ill fame in that vicinity; that it was street talk, but he heard but little about it until after defendant was arrested.

The foregoing is the substance of the people's testimony. It was the theory of the defendant that her arrest and conviction was the outcome of a conspiracy between Marshal Gates and the other witnesses against her; and she gave testimony herself, and introduced the witness Van Zee, for the purpose of proving it. This theory, and the testimony given with a view of establishing it, was fairly submitted to the jury, who evidently did not believe the testimony supporting it, as their verdict is against the defendant.

The offense charged is a vile one, usually committed in the night-time, and in secret, and is therefore a most difficult one to detect, and a still more difficult one to prove. Circumstances generally have to be resorted to in making it out, as direct or positive testimony can seldom

be obtained, and a large latitude should always be given in putting in the testimony to establish the crime; and I do not think the rule was infringed upon, in this case, to the prejudice of the defendant.

Upon a careful reading of the charge, I have been unable to discover any fault in it. It is quite as favorable to the defendant as the law of the case will permit, and, in some points, more in favor of the defendant than she could, under the circumstances, have had any reason to expect, and the judgment should be affirmed.