## PEOPLE v JOHNSON

1. SEARCHES AND SEIZURES—PLAIN VIEW—AUTOMOBILES—STATUTES.

The statute requiring a motor vehicle to have either a tail lamp or a separate lamp to illuminate the rear registration plate and requiring that any tail lamp or tail lamps, together with any separate lamp for illuminating the rear registration plate, be so wired as to be lighted whenever the head lamps or auxiliary driving lamps are lighted, gives a state police officer the necessary authority to stop an automobile having two taillights one of which was not operating, and the trooper, having a right to stop and be where he is, has a right to seize any weapons falling in his plain view (MCLA 257.686[6]).

2. SEARCHES AND SEIZURES—AUTOMOBILES—CRIMINAL LAW.

A search of the cabin of an automobile by a police officer to determine whether there was additional evidence or fruits of a concealed weapons offense or whether the vehicle had a connection with an earlier reported murder was proper where the vehicle was lawfully stopped by the officer, the officer lawfully arrested the driver and passenger for carrying a concealed weapon and the two had been handcuffed, placed in the back of the patrol car, and given the *Miranda* warnings, the arrested passenger gave his last name as Johnson, the automobile was of the same make and year as an automobile, registered in the name of Johnson, earlier reported as being involved in a murder not far from the scene of the stop, although the car stopped was not registered in the name of Johnson, and the search was confined to the cabin area and did not intrude into locked or hidden places; the evidence found in such a search was properly admissible in the defendant passenger's trial for carrying a concealed weapon (MCLA 750.227).

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 7 Am Jur 2d, Automobiles and Highway Traffic § 53.
    47 Am Jur, Searches and Seizures §§ 13, 18.
[3] 58 Am Jur, Witnesses §§ 621, 631, 649, 664.
[4] 5 Am Jur 2d, Appeal and Error §§ 622, 623.
    63 Am Jur 2d, Prosecuting Attorneys § 27.

3. CRIMINAL LAW—CROSS-EXAMINATION—DISCRETION.

The trial court possesses broad discretion in defining the scope of proper cross-examination and absent abuse, the Court of Appeals will not interfere with that discretion; the trial court in a criminal trial for carrying a concealed weapon did not abuse its discretion in allowing a prosecutor to question a defendant on his lack of employment and financial status.

4. CRIMINAL LAW—PROSECUTOR'S REMARKS—PRESERVING QUESTION.

Absent a miscarriage of justice, failure of the defendant to object to or request a cautionary instruction concerning irrelevant comment and argument of the prosecutor precludes review of that issue; there was no miscarriage of justice where the jury charge reveals that the trial court went to great lengths to dispel any erroneous impression which the prosecutor's argument might have created.

Appeal from Saginaw, Eugene Snow Huff, J. Submitted Division 3 May 9, 1973, at Grand Rapids. (Docket No. 13895.) Decided June 26, 1973. Leave to appeal granted, 391 Mich —.

Elwood Johnson was convicted of carrying a concealed weapon. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *George E. Thick, II,* Prosecuting Attorney, and *Ray J. MacNeil,* Assistant Prosecuting Attorney, for the people.

*Michael C. Moran,* Assistant State Appellate Defender, for defendant.

Before: DANHOF, P. J., and McGREGOR and MILES,* JJ.

DANHOF, P. J. Defendant was convicted by a jury of carrying a concealed weapon, MCLA 750.227; MSA 28.424. He was sentenced to a term of 2-1/2 to 5 years in prison and appeals. We affirm.

Prior to trial, a motion was made to suppress

---

*Circuit judge, sitting on the Court of Appeals by assignment.

certain evidence claimed to have been the product of an illegal search. At the hearing on the motion to suppress, the following facts appear from the record. On October 10, 1971, at approximately 6 p.m., defendant was a passenger in a 1965 Pontiac automobile driven by Lee Roy Reed which was stopped by a Michigan State Police trooper because the right taillight was not operating. The trooper stated that it was dusk, and that about half the cars on the road had their lights on. The trooper approached the car and informed Reed of the inoperative taillight. When the trooper saw a TV set on the back seat of the automobile, he asked to examine Reed's operator's license, vehicle registration and proof of insurance. While in the process of examining these documents, the beam of the trooper's flashlight fell upon a pistol on the passenger's side of the automobile, behind defendant's left foot. Thereupon, both Reed and defendant were ordered out of the car, placed under arrest for carrying a concealed weapon, frisked, and handcuffed. The weapon, a .38-caliber Smith & Wesson top-break, was removed from the automobile.

The trooper placed the suspects in the rear seat of the patrol car and radioed for assistance of another car and a wrecker. When help arrived, the trooper returned to the stopped automobile to remove the television set and search for other weapons. Upon opening the door of the car, he noticed on the floor another pistol, a .32-caliber automatic, and a small bottle which apparently contained cocaine. While removing these items the trooper noticed the butt of a third pistol, a .38-caliber Smith & Wesson side-break snub-nosed revolver, sticking out from under the passenger's seat. All of these items were confiscated.

Concerning the seizure of the first weapon, there was no error in the denial of defendant's motion to suppress. MCLA 257.686(b); MSA 9.2386(b) provides:

"Either a tail lamp or a separate lamp shall be so constructed and placed as to illuminate with a white light the rear registration plate and render it clearly legible from a distance of 50 feet to the rear. Any tail lamp or tail lamps, together with any separate lamp for illuminating the rear registration plate, shall be so wired as to be lighted whenever the head lamps or auxiliary driving lamps are lighted."

This statute gave the trooper the necessary authority to stop this vehicle. Having had the right to stop and be where he was, the trooper had the right to seize any weapons falling in his plain view. *Harris v United States,* 390 US 234; 88 S Ct 992; 19 L Ed 2d 1067 (1968); *People v Tisi,* 384 Mich 214; 180 NW2d 801 (1970); *People v Kuntze,* 371 Mich 419; 124 NW2d 269 (1963).

The legality of the further search of the cabin of the automobile and the seizure of the second and third weapons remains, however, an issue. Defendant contends that since he and Reed had been removed from the vehicle, placed under arrest, handcuffed, placed in the patrol car, and since another trooper had arrived, there was no need for a further warrantless search of the vehicle. Defendant contends that this is so because neither suspect could have regained the automobile to destroy evidence or reach weapons.

After defendant and Reed had been placed in the patrol car and had been given the *Miranda* warnings, the trooper requested and was given the name of defendant Johnson. Upon being informed of defendant's last name, the trooper remembered reading in the radio log earlier that day that a

1965 Pontiac automobile which he seemed to remember was registered in the name of Johnson had been involved in a murder in the area of Sixth and Myrtle in the City of Saginaw. The car in which defendant was riding was stopped not far from Sixth Street and was the same make and year, but was not registered in the name of Johnson.

Under these circumstances we hold that it was not unreasonable for the trooper to return to the stopped vehicle and conduct a cursory search of its cabin to determine either whether there was additional evidence or fruits of the concealed weapons offense, or whether the vehicle had a connection with the earlier reported murder. The search was made at the scene and immediately following a lawful felony arrest. The search was confined to the cabin area and did not intrude into locked or hidden places. The distinction between a search of the cabin area as opposed to the trunk area of an automobile whose occupants had been placed under arrest for a concealed weapons offense was made by Judge LEVIN in *People v James,* 36 Mich App 550; 194 NW2d 57 (1971). There two handguns found in the cabin were declared admissable under authority of *Chambers v Maroney,* 399 US 42; 90 S Ct 1975; 26 L Ed 2d 419 (1970). However a shotgun seized in the trunk was found inadmissable. That defendant's motion for suppression of the second and third weapons was properly denied in the case at bar is buttressed by the fact that *Chambers* emphasized the necessity for the immediacy of the search, but that nevertheless the search in that case, which was not confined to the open area of the cabin, was made after the vehicle was removed to the station house.

Defendant also alleges error in the scope of

cross-examination allowed the prosecutor. In his inquiry, the prosecutor questioned defendant on his lack of employment and financial status. The trial court possesses broad discretion in defining the scope of proper cross-examination and absent abuse, this Court will not interfere. *People v Dye,* 356 Mich 271, 277; 46 NW2d 788, 791–792 (1959).

Lastly, defendant alleges error in the prosecutor's closing argument where it was stated:

"Consider the fact too, that the defendant had two cents in his pocket at the time he was arrested. Now, what are the proofs, you tell me. Think about it. There's a man with two cents in his pocket and he hasn't worked for a long time, there's three guns, three fully loaded weapons in the vehicle. That is something that you can consider when you decide whether or not this defendant committed this particular violation."

The purpose or intent with which a weapon is carried is not an element of the offense proscribed by MCLA 750.227; MSA 28.424. The only element of intent necessary under the statute is the intent to do the act prohibited. 3 Gillespie, Michigan Criminal Law & Procedure (2d ed) § 1461, pp 1846, 1847. We agree with defendant that the above argument was irrelevant. However, defendant did not object or request a cautionary instruction. Absent a miscarriage of justice, this precludes review. *People v Oliver,* 29 Mich App 402; 185 NW2d 433 (1971); *People v Page,* 27 Mich App 682; 183 NW2d 838 (1970). An examination of the jury charge reveals that the trial court went to great lengths to dispel any erroneous impression which the prosecutor's argument might have created.

"So, members of the jury, in other words under this statute it is unlawful for any person to carry any of the weapons mentioned in the statute except hunting

knives adapted and carried as such, concealed on or about his person, and whether concealed or not in any vehicle operated or occupied by him, except in his dwelling house or place of business or other land possessed by him.

"The intent with which the weapon was carried is not material and it is not necessary that the prosecution prove that the Defendant intended to commit such crime with the use of such weapon. It is sufficient to bring the offense within the statute, if you find that weapon fairly comes within the class of weapons included in the statute. That the Defendant knowingly carried it and concealed it upon or about his person or in any vehicle operated or occupied by him.

\* \* \*

"The issues in this case are very simple ones. Did the Defendant Elwood Johnson, Jr. knowingly and consciously carry Exhibits 1, 2 or 3 on or about his person, or in any automobile occupied by him. And, if he did so was it a pistol or a dangerous weapon within the meaning of the statute as I have explained it to you."

There was no miscarriage of justice.

Affirmed.

All concurred.