### PEOPLE v JOHNSON

Docket No. 55089. Argued October 8, 1974 (Calendar No. 5).—Decided April 7, 1975.

Elwood Johnson was convicted in a jury trial in Saginaw Circuit Court, Eugene Snow Huff, J., of carrying a concealed weapon. At the trial, the prosecutor cross-examined defendant on his employment and educational record, his marital status, his means for supporting his children, his financial history, his past conviction of uttering and publishing, and his present probationary status. Defendant appealed. The Court of Appeals, Danhof, P. J., and McGregor and Miles, JJ., affirmed (Docket No. 13895). Defendant appeals. *Held:*

1. Permitting prosecutorial questioning and argument that the jury can consider defendant's poverty and unemployment in determining guilt on the charge of carrying a concealed weapon was improper and erroneous.

2. Permitting prosecutorial questioning and argument suggesting that defendant was en route to commit a violent crime not charged was improper and erroneous.

3. The trial court abused its discretion by allowing such irrelevant matters to be brought to the jury's attention.

REFERENCES FOR POINTS IN HEADNOTES

[1, 5, 9] 75 Am Jur 2d, Trial § 280 *et seq.*

56 Am Jur, Weapons and Firearms § 10.

[2] 58 Am Jur, Witnesses § 620 *et seq.*

[3, 5] 29 Am Jur 2d, Evidence §§ 230, 320 *et seq.*

58 Am Jur, Witnesses § 96.

[4–6, 9] 58 Am Jur, Witnesses §§ 621, 624, 631, 664.

[7, 8] 68 Am Jur 2d, Searches and Seizures §§ 23, 39, 40, 43, 45, 88, 99.

Search and seizure: observation of objects in "plain view"—Supreme Court cases. 29 L Ed 2d 1067.

Validity, under federal Constitution, of warrantless search of automobile—Supreme Court cases. 26 L Ed 2d 893.

Lawfulness of search of motor vehicle following arrest for traffic violation. 10 ALR3d 314.

[8] Lawfulness of nonconsensual search and seizure without warrant, prior to arrest. 89 ALR2d 715.

[10] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*

75 Am Jur 2d, Trial §§ 118, 919 *et seq.*

M. S. Coleman and J. W. Fitzgerald, JJ., dissented on the ground that the evidence showed that the defendant was clearly guilty of the crime charged, and the arguments, while irrelevant to the defendant's guilt, did not result in a miscarriage of justice.

48 Mich App 50; 209 NW2d 868 (1973) reversed.

### Opinion of the Court

1. Weapons—Poverty—Unemployment—Credibility—Argument— Prejudice.

   Neither poverty nor unemployment is an element of the crime of carrying a concealed weapon and whether a man is employed or unemployed is no proof or partial proof of carrying a concealed weapon, nor does it affect his credibility; consequently argument and advice to the jury by the prosecutor and cross-examination leading up to it that the jury can consider defendant's poverty and unemployment in determining his guilt of carrying a concealed weapon is patently prejudicial (MCLA 750.227).

2. Criminal Law—Defendant Testifying—Impeachment—Argument—Probationary Status.

   Permitting reference to a defendant's probationary status in cross-examining him, and subsequent reference to it in closing argument for impeachment, in a trial taking place on or after November 20, 1973, is clear error under a decision of the Supreme Court.

3. Criminal Law—Proofs—Unrelated Crimes.

   The prosecution may not introduce an independent issue of the commission of an uncharged, unrelated crime, nor allude to it in closing argument, in order to gain defendant's conviction of the crime charged.

4. Trial—Inquiry—Argument—Discretion.

   A trial court has broad discretion in exercising its judgment whether a particular line of inquiry or argument is to be allowed before the jury, yet there is an obvious limit to the exercise of such discretion.

5. Criminal Law—Cross-Examination—Argument—Inquiries— Weapons—Discretion.

   A trial court abused its discretion in allowing the prosecutor free rein to cross-examine a defendant, and subsequently to refer to

the cross-examination in closing argument, through inquiries designed to demonstrate a causal connection between extraneous matters and guilt on the charge of carrying a concealed weapon, and through his attempt to convict the defendant of the charged offense by means of persuading the jury that defendant was on his way to commit an altogether unrelated offense.

6. TRIAL—DEFENDANT TESTIFYING—CHARACTER EXAMINATION—DISCRETION.

It is the duty of the courts to keep within reasonable bounds prosecutorial "character" examination of a defendant who is testifying.

DISSENTING OPINION

M. S. COLEMAN and J. W. FITZGERALD, JJ.

7. SEARCHES AND SEIZURES—PLAIN VIEW—AUTOMOBILES—STATUTES.

*The statute requiring a motor vehicle to have either a tail lamp or a separate lamp to illuminate the rear registration plate and requiring that any tail lamp or tail lamps, together with any separate lamp for illuminating the rear registration plate, be so wired as to be lighted whenever the head lamps or auxiliary driving lamps are lighted, gives a state police officer the necessary authority to stop an automobile having two taillights one of which was not operating, and the trooper, having a right to stop and be where he is, has a right to seize any weapons falling in his plain view (MCLA 257.686[6]).*

8. SEARCHES AND SEIZURES—AUTOMOBILES—CRIMINAL LAW.

*A search of the cabin of an automobile by a police officer to determine whether there was additional evidence or fruits of a concealed weapons offense or whether the vehicle had a connection with an earlier reported murder was proper where the vehicle was lawfully stopped by the officer, the officer lawfully arrested the driver and passenger for carrying a concealed weapon and the two had been handcuffed, placed in the back of the patrol car, and given the* Miranda *warnings, the arrested passenger gave his last name as Johnson, the automobile was of the same make and year as an automobile, registered in the name of Johnson, earlier reported as being involved in a murder not far from the scene of the stop, although the car stopped was not registered in the name of Johnson, and the search was confined to the cabin area and did not intrude into locked or hidden places; the evidence found in such a search*

*was properly admissible in the defendant passenger's trial for
carrying a concealed weapon (MCLA 750.227).*

9. CRIMINAL LAW—CROSS-EXAMINATION—DISCRETION.

   *The trial court possesses broad discretion in defining the scope of
   proper cross-examination and absent abuse, appellate courts
   will not interfere with that discretion; the trial court in a
   criminal trial for carrying a concealed weapon did not abuse its
   discretion in allowing a prosecutor to question a defendant on
   his lack of employment and financial status.*

10. CRIMINAL LAW—PROSECUTOR'S REMARKS—PRESERVING QUESTION.

   *Absent a miscarriage of justice, failure of the defendant to object
   to or request a cautionary instruction concerning irrelevant
   comment and argument of the prosecutor precludes review of
   that issue; there was no miscarriage of justice where the jury
   charge reveals that the trial court went to great lengths to
   dispel any erroneous impression which the prosecutor's argu-
   ment might have created.*

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *E. Brady Denton,*
Prosecuting Attorney, and *Daniel R. Connell,*
Chief Appellate Attorney, for the people.

*State Appellate Defender Office* (by *Marc L.
Goldman),* for defendant on appeal.

WILLIAMS, J. This opinion indicates that trial
court discretion is abused in permitting prosecuto-
rial cross-examination and argument tending to
show (1) that a jury may consider defendant's
poverty and unemployment in deciding whether or
not he is guilty of carrying a concealed weapon
(CCW) and (2) that defendant because of his pov-
erty and unemployment was about to employ
three loaded weapons in the car occupied by him
to commit a crime of violence, when the only
crime charged was CCW.

While defendant in the instant case raises a
number of other allegations of error in this appeal,
it is only these issues which spur our decision

today. We express no opinion on other issues raised by the parties not necessary to our decision.

The Court of Appeals is reversed. This cause is remanded for new trial or other proceedings not inconsistent with this opinion.

## I —Facts

On October 10, 1971, at dusk, Officer Logan Tisdale of the Michigan State Police, in the course of his patrol duties, observed a 1965 Pontiac with one inoperative taillight proceeding westbound on M-81 in Saginaw, Michigan. Trooper Tisdale turned his patrol car around, gave chase, and quickly stopped the offending vehicle. As the Trooper approached the car after the stop, he noticed a TV set resting on the back seat.

While in the process of checking the driver's license and car registration, the beam of the trooper's flashlight fell upon a pistol partially hidden behind defendant Johnson's left foot. Johnson was sitting in the passenger seat of the Pontiac. Thereupon, defendant and the driver, Leroy Reed, were ordered out of the car at gunpoint, arrested, frisked, handcuffed to one another and placed in the rear of the patrol car. While accomplishing this task, Trooper Tisdale confiscated the weapon, a .38-caliber Smith & Wesson top-break, he had observed behind defendant's foot.

The trooper then radioed for assistance and for a wrecker. When a second State Police car arrived, the arresting trooper returned to the stopped automobile to remove the television set. In accomplishing that endeavor, Trooper Tisdale discovered under the front seat of the Pontiac two additional weapons, a .32-caliber automatic and a .38-caliber

Smith & Wesson side-break snub-nosed revolver. Both of these pistols were eventually confiscated.

Defendant was charged with the crime of carrying a concealed weapon. MCLA 750.227; MSA 28.424. A pretrial motion to suppress the weapons was denied by the trial court.

At trial, only two witnesses were called to the witness stand: Trooper Tisdale and defendant Johnson. The prosecutor's cross-examination of defendant concentrated nearly exclusively[1] on defendant's background and alleged predisposition to criminal activity. The cross-examination included reference to:

*his employment and education record:*

"*Q.* Where were you working on the tenth of October?

"*A.* I wasn't working.

"*The Court:* Will you talk louder please, and answer louder?

"*Witness:* I wasn't working.

"*Mr. Webber [assistant prosecuting attorney]* (Con't.):

"*Q.* Where are you working today?

"*A.* I am not working.

"*Q.* How long has it been since you held a job?

"*Mr. Geyer [defense counsel]:* Your Honor, I am going to object to this line of questioning. I think it is immaterial whether Mr. Johnson is working to the charges here against him.

"*Mr. Webber:* This is cross-examination.

"*The Court:* Yes, he's the defendant and the jury is entitled to know something about him and the objection will be overruled. You may proceed.

"*Mr. Webber* (Con't.):

"*Q.* When is the last time you have worked, Mr. Johnson?

---

[1] All told, the prosecutorial questioning of appellant *other* than that which focuses on appellant's background and predisposition, constitutes only about one page of total testimony.

"*A.* I did some work with my cousin.

"*Q.* You did what?

"*A.* Odd jobs with my cousin.

"*Q.* When was that?

"*A.* That was a couple of months, about three months ago the last time.

"*Q.* Well, let me ask you this, how far did you go in school?

"*A.* I graduated.

"*Q.* Graduated from high school?

"*A.* Yes.

"*Q.* Did you get a job upon graduating or going into the military or what?

"*A.* I got a job before I graduated.

"*Q.* Where were you working?

"*A.* At the Chevrolet garage.

"*Q.* How long did you work there?

"*A.* Seven years.

"*Q.* I can't hear you, sir.

"*A.* Seven years.

"*Q.* And why did you terminate that employment?

"*A.* Because of my health.

"*Q.* What was wrong with your health?

"*A.* My lungs.

"*Q.* Were you fired from your job?

"*A.* No, not really.

"*Q.* Did you quit voluntarily?

"*A.* I was off sick, yes.

"*Q.* You failed to report for work?

"*A.* Yes, you can say that.

"*Q.* Did you hold any other jobs since then, Mr. Johnson?

"*A.* Not steady."

*his marital status, means for supporting his children, and financial history:*

"*Q.* \* \* \* How do you support yourself?

"*A.* How do I support myself?

"*Q.* Are you married?

"*A.* Yes.

"*Q.* Are you living with your wife?

"*A.* No.

"*Q.* Are you paying any child support on your children?

"*A.* Yes.

"*Q.* How many?

"*A.* Two.

"*Q.* Tell us how you support yourself?

"*A.* I receive a set amount from the Chevrolet."

*his past conviction for uttering and publishing and present probationary status:*

"*Q.* Now, back in July of '70 you were convicted of uttering and publishing, is that correct?

"*A.* Yes.

"*Q.* You're on probation today for that offense, are you not?

"*A.* Yes."

Defense counsel had earlier raised the matter of the uttering and publishing conviction on direct examination but had not touched upon defendant's current probationary status.[2]

The prosecutor continued his focus on defendant in his closing argument, where he argued, *inter alia:*

"Consider the fact too, that the defendant had two cents in his pocket at the time he was arrested. Now, what are the proofs, you tell me. Think about it. *There's a man with two cents in his pocket and he hasn't worked for a long time, there's three guns, three*

---

[2] The prosecutor also questioned defendant about an alleged past nonsupport conviction not earlier raised by defense counsel. Due to our disposition of this matter today, there is no need to reach the issue of the propriety of impeachment through use of past conviction record. *Cf. People v Jackson,* 391 Mich 323; 217 NW2d 22 (1974).

*fully loaded weapons in the vehicle. That is something that you can consider when you decide whether or not this defendant committed this particular violation."* [Emphasis added.]

Defendant was jury-convicted of carrying a concealed weapon and was sentenced to a term of 2-1/2 to 5 years in prison. The Court of Appeals affirmed. 48 Mich App 50; 209 NW2d 868 (1973). We granted leave to appeal on January 28, 1974. 391 Mich 764.

## II —Prosecutorial Questioning and Advice That Jury Can Consider Defendant's Poverty and Unemployment in Determining CCW Guilt Is Improper and Erroneous

In the prosecutor's argument quoted above, the prosecutor said in effect:

"[Y]ou can consider when you decide whether or not this defendant committed this particular violation [CCW] *·* * [that he is] a man with two cents in his pocket and he hasn't worked for a long time * * * ."

Obviously neither poverty nor unemployment is an element of the crime of carrying a concealed weapon. Either a poor man or a rich man may be either guilty or innocent of carrying a concealed weapon. Likewise whether a man is employed or unemployed is no proof or partial proof of carrying a concealed weapon. Neither does defendant's poverty or unemployment affect his testimonial credibility in this case. In short, these things neither in law nor in logic are evidence of defendant's guilt or innocence or his tendency to lie or tell the truth. To assert otherwise is to argue a *non sequitur.*

Consequently this argument and advice to the jury by the prosecutor is erroneous and patently prejudicial.[3] And in this connection so is the cross-examination leading up to this argument and advice.


### III — PROSECUTORIAL QUESTIONING AND ARGUMENT SUGGESTIVE DEFENDANT WAS EN ROUTE TO COMMITTING VIOLENT CRIME NOT CHARGED IMPROPER AND ERRONEOUS

The prosecutor's argument quoted above and the bulk of his cross-examination attempted to create in the minds of the jury the belief that defendant because of his poverty and unemployment plus the possession of three loaded weapons was en route to committing a robbery armed or some such crime. That this is what the prosecutor was about is clear on the face of the record and is reinforced by the following reaction of the trial judge, who noted in the sentencing proceedings:

"It looked as if you were on the way to commit another crime."

We will not condone the prosecutorial effort to "prove" commission of an uncharged, unrelated "Crime X" in order to gain defendant's conviction of "Crime Y". This is far from a novel proposition in Michigan.[4] Eighty-five years ago, this Court held unequivocally:

---

[3] We note as well that had the reference to defendant's probationary status, and the subsequent reference thereto made in closing argument, been made in a trial taking place on or after November 20, 1973, such impeachment would have been clear error under *People v Rappuhn*, 390 Mich 266; 212 NW2d 205 (1973), decided that date.

[4] Nor is it novel in other jurisdictions. See as recent examples: *State v Beyor*, 129 Vt 472; 282 A2d 819 (1971), and *People v Liapis*, 3 Ill App 3d 864; 279 NE2d 368 (1972).

"Whatever latitude is proper in cross-examination to test veracity, it cannot properly introduce independent issues against the person who is both witness and respondent." *People v Pinkerton,* 79 Mich 110, 114; 44 NW 180 (1889).

Likewise, the prosecutor may not allude to such proscribed issues in closing argument.

The passage of 85 years has not disturbed the validity of this maxim of evidentiary trial practice in the slightest. As recently as last year, we reaffirmed this proposition even where the witness is *not* a criminal defendant. *People v Whalen,* 390 Mich 672, 683–687; 213 NW2d 116 (1973). See also: *People v Wright,* 294 Mich 20, 27–30; 292 NW 539 (1940), and citations contained therein; and 1 Gillespie, Michigan Criminal Law & Procedure, § 442, p 548.

After scrupulous review of the record in this case, we find it undeniable that defendant's analysis of the courtroom atmosphere created by the prosecutor is correct:

"It is obvious that the cross-examination of Appellant was designed to create in the minds of the jury the inference that was later explicitly articulated by the prosecutor. The inference is as follows: An impoverished, unemployed man is found in a vehicle which also contained three guns. Having no money and no job, he is obviously on his way to commit a crime. He therefore must have known that the weapons were in the vehicle."

## IV —CONCLUSION

Whether defendant was rich or poor, employed or unemployed, has nothing to do with guilt in the instant case nor do allegations and insinuations of potential predisposition to commit a forcible crime

against persons or property go to proving the charged offense of carrying a concealed weapon.

That is not to say, however, that the trial court does not have considerable discretion in ruling on the relevance and materiality of argument coming before it. Clearly, the trial court has broad discretion in exercising its judgment whether a particular line of inquiry or argument is to be allowed before the jury.[5] *People v Dye,* 356 Mich 271, 277; 96 NW2d 788 (1959). Yet there is an obvious limit to the exercise of such discretion in cases of abuse. *People v Dye, supra,* 277.

In the instant case, the trial court did indeed abuse its discretion in allowing the prosecutor free rein to cross-examine defendant (and to subsequently refer to such cross-examination in closing argument) through inquiries designed to demonstrate a causal connection between extraneous matters and guilt on the charge of carrying a concealed weapon, and through his attempt to convict defendant of the charged offense by means of persuading the jury that defendant was on his way to commit an altogether unrelated offense.

It is the duty of the courts to keep prosecutorial "character" examination "within reasonable bounds." *People v Gotshall,* 123 Mich 474, 483; 82 NW 274 (1900). The instant case well illustrates the necessity for such constraint.

---

[5] Appellee also argues that failure to request a curative instruction bars consideration on appeal of the "prejudicial propensity" of its line of questioning. Appellee cites for this proposition *People v Humphreys,* 24 Mich App 411; 180 NW2d 328 (1970); *People v Majette,* 39 Mich App 35; 197 NW2d 78 (1972); and *People v Sesson,* 45 Mich App 288; 206 NW2d 495 (1973).

Critical to the line of cases cited *supra,* was the absence of objection on the part of defense counsel, a factor *not* found in the instant case. At any rate, we are not persuaded that the "prejudicial propensity" of the improper questioning and argument in the instant case could have been eliminated no matter the amount of cautionary instruction. *Humphreys, supra,* 415.

We hold that the cross-examination of defendant in the instant case, and the subsequent prosecutorial reference thereto in closing argument, were prejudicially and reversibly erroneous. The trial court abused its grant of discretion in the instant case by allowing such irrelevant matters to be brought to the jury's attention.

The Court of Appeals is reversed. This cause is remanded for new trial or further proceedings not inconsistent with this opinion.

T. G. KAVANAGH, C. J., and T. M. KAVANAGH, SWAINSON, and LEVIN, JJ., concurred with WILLIAMS, J.

M. S. COLEMAN, J. *(dissent).* Whether poor or not, defendant sat on the front passenger side of an automobile with two pistols by his feet. On the floor by the back seat was another pistol and a small bottle apparently containing cocaine. On the back seat of the car was a television set. He was charged with carrying a concealed weapon of which offense he was clearly guilty.

For the reasons set forth in the opinion of Court of Appeals Judge DANHOF in 48 Mich App 50; 209 NW2d 868 (1973), I would affirm the conviction.

J. W. FITZGERALD, J., concurred with M. S. COLEMAN, J.