*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CHARLES ANTHONY STEPHENS,

Defendant-Appellant.

UNPUBLISHED
January 10, 2019

No. 335754
Oakland Circuit Court
LC No. 2016-258463-FC

Before: MURPHY, P.J., and JANSEN and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of first-degree felony murder, MCL 750.316(1)(b). The trial court sentenced defendant, a fourth habitual offender, MCL 769.12, to the legislatively mandated term of life in prison without the possibility of parole, MCL 750.316(1). We affirm.

This case arises out of a brutal stabbing murder and contemporaneous larceny committed against defendant's neighbor, the victim, in the apartment across the hall from where he and his wife, TS, lived. Defendant's mother, JR owned his apartment, to his displeasure. TS testified that defendant frequently threatened her, including on the night before the murder, and made threats to kill JR. Defendant stopped working a month before the murder and was upset that he needed money to leave the apartment; additionally, he had been drinking, which TS testified generally had a deleterious effect on his anger and self-control. Although there were no eyewitnesses to the murder itself, defendant's DNA was found on the victim, defendant was found in possession of some of the victim's belongings, and shortly after the murder defendant sold, at a pawn shop, a valuable necklace that the victim's faith required her to wear at all times. TS also testified that defendant made her wash blood off a knife with bleach shortly after the murder and left the apartment. Defendant testified on his own behalf, asserting that he was having a consensual extramarital affair with the victim, he had no knowledge of her murder, and his possession of her items was coincidental pursuant to a fencing scheme with an accomplice, a maintenance worker who worked in the building, who defendant alleged committed the theft and probably the murder. The jury apparently did not accept defendant's version of events.

Defendant first contends that the trial court abused its discretion when it denied his motion for a mistrial during the testimony of defendant's wife. Defendant specifically alleges that the prosecutor improperly elicited or attempted to elicit testimony from TS that defendant (a) threatened to kill TS, (b) threatened to kill JR, and (c) raped TS's daughter. We disagree.

Defendant timely argued that the prosecutor should not have elicited testimony that defendant threatened JR and raped TS's daughter; thus, his claims of prosecutorial error and for a mistrial on that basis are preserved. *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011); *People v Pipes*, 475 Mich 267, 277-278; 715 NW2d 290 (2006). Defendant further objected to the relevance of defendant's threat to kill TS, but did not argue that the admission of this testimony either supported his motion for mistrial or constituted prosecutorial error. Generally, a trial court's decision on a motion for a mistrial is reviewed for an abuse of discretion. *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995). "When error involves the unsolicited outburst of a witness, the correct standard of review is whether the trial court abused its discretion in denying the defendant's motion for a mistrial. A mistrial should be granted only where the error complained of is so egregious that the prejudicial effect can be removed in no other way." *People v Gonzales*, 193 Mich App 263, 266; 483 NW2d 458 (1992). We review claims of prosecutorial error on a case-by-case basis in the context of the entire record to determine whether the defendant was denied a fair trial. *Brown*, 294 Mich App at 382-383. To the extent this issue requires review of the trial court's evidentiary decisions, the trial court's decisions are reviewed for an abuse of discretion. *People v Unger*, 278 Mich App 210, 216; 749 NW2d 272 (2008).

The trial court properly found defendant's threats against TS to be admissible. Defendant seems to contend that this evidence was improperly admitted as MRE 404(b) evidence. However, defendant's own statements are "just that—a statement, not a prior act. MRE 404(b) does not apply to a defendant's prior statements . . . Rather, the appropriate analysis is whether the prior statement is relevant, and if so whether its probative value outweighs its potential prejudicial effect." *People v Goddard*, 429 Mich 505, 518; 418 NW2d 881 (1988). Defendant's threats explained in part why TS feared defendant, which in turn explained in part why she initially lied to police regarding defendant's whereabouts on the day of the murder, as well as why she eventually cleaned the murder weapon, a knife, with bleach. The credibility of a witness is almost always relevant and proper for the jury's consideration. *People v Layher*, 464 Mich 756, 762-765; 631 NW2d 281 (2001). While that does not necessarily mean there are never reasons why such evidence should nevertheless be excluded, defendant provides no explanation why his threats to TS were unfairly prejudicial or otherwise improper.

The trial court otherwise deemed inadmissible defendant's threat to kill JR and TS's testimony regarding defendant's purported rape of her daughter. The trial court immediately instructed the jury to disregard those statements, so instructed the jury again after denying the mistrial, and verbally confirmed from the jury that they understood its directions. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). We find nothing in the record to suggest that defendant was prejudiced. Nevertheless, we will consider defendant's arguments.

We note that both testimonial statements were unsolicited. TS testified to the threats in a meandering response to the prosecutor's question, "What was going on in the evening of the 20th

over to the morning of the 21st?" In response to this question, TS explained that defendant had been drinking excessively, that he was upset with JR, and consequently he said he wanted to kill TS and JR. Defense counsel immediately objected, and the trial court sustained the objection; neither explained the basis for so doing. The jury was instructed to disregard the entire response. After eliciting testimony regarding defendant's history of threatening TS, the prosecutor then asked TS point-blank if defendant had ever threatened to kill JR. Defense counsel immediately objected on relevance grounds. However, before the trial court could respond to the objection, TS answered the question, "Yes." The trial court immediately instructed the jury to disregard the answer. It then sustained the objection and again instructed the jury to disregard TS's answer.

TS's first statement about threats to JR was clearly unresponsive and unsolicited, which is generally not a proper basis for granting a mistrial. *Haywood*, 209 Mich App at 228. While we cannot entirely fault defendant's argument that the prosecutor should not have made a subsequent direct inquiry into those threats, we find it dispositive that defense counsel never articulated a basis for the objection or which of several portions of TS's response had been objectionable. Therefore, the prosecutor clearly did not attempt to elicit facts that had clearly been deemed inadmissible, and the prosecutor's subsequent stated explanation for the question reflects that the prosecutor did so in good faith. See *Abraham*, 256 Mich App at 278 ("A finding of prosecutorial misconduct may not be based on a prosecutor's good-faith effort to admit evidence."). The prosecutor was hardly the first to have a defense objection sustained at trial, which is all that occurred here.

TS's statement that defendant had raped her daughter was clearly unresponsive, volunteered testimony to a proper question. The prosecutor asked TS if she had been able to sleep the night before the murder, a question that could and should have been answered either "yes" or "no." In response to this question, TS provided a lengthy answer that culminated in a claim that defendant had raped her daughter. Nothing in the prosecutor's questioning of TS suggested that he could have expected such a response. Again, "an unresponsive, volunteered answer to a proper question is not grounds for the granting of a mistrial." *Haywood*, 209 Mich App at 228. Furthermore, while as noted we find no prejudice in light of the trial court's instructions, there was little potential for prejudice in any event: the other evidence against defendant was overwhelming and included DNA evidence and defendant's possession and sale of the victim's personal belongings. The defense presented by defendant during trial suggested exceedingly poor character on his part: that he was allegedly engaging in an extramarital affair with the victim and had engaged in a fencing scheme with a maintenance employee who stole the victim's marital necklace, which, presumably, defendant somehow failed to recognize. Any prejudice defendant suffered was, in context, relatively minimal, which precludes a mistrial as an appropriate remedy. See *Gonzales*, 193 Mich App at 266.

Defendant next argues that the prosecutor committed misconduct by improperly shifting the burden of proof at trial by asking whether defendant could produce any other witnesses to support his own testimony, and that his trial counsel was ineffective for failing to raise the issue. We disagree.

Because this claim of prosecutorial error was not raised below, it is unpreserved and reviewed for plain error affecting defendant's substantial rights. *Brown*, 294 Mich App at 382. Furthermore, no error will be found if any prejudice could have been alleviated by a curative

-3-

instruction. *People v Bennett*, 290 Mich App 465, 476; 802 NW2d 627 (2010). Likewise, defendant did not move for a new trial a *Ginther*[1] hearing below on the basis of ineffective assistance of counsel, so this claim is also unpreserved, and our review is limited to mistakes apparent on the record. *People v Rodriguez*, 251 Mich App 10, 38; 650 NW2d 96 (2002); *People v Rodgers*, 248 Mich App 702, 713-714; 645 NW2d 294 (2001).

We appreciate that the question raised is of concern. The prosecution is forbidden from asserting that a defendant is obligated to prove anything, present evidence, or provide an explanation for any particular evidence introduced by the prosecution. *People v Fyda*, 288 Mich App 446, 463-464; 793 NW2d 712 (2010). However, "[a]ttacking the credibility of the theory advanced by [defendant] did not shift the burden of proof" and is entirely proper. *Id*. at 464-465. "The prosecution has wide latitude in arguing the facts and reasonable inferences, and need not confine argument to the blandest possible terms." *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007). The prosecution may not "burden a defendant's right not to testify," but if a defendant elects to testify nonetheless, he opens himself up to questioning and commentary regarding any alibis or alternate theories advanced by the defendant, which will then merely constitute proper exploration of weaknesses in the defendant's case. *People v Fields*, 450 Mich 94, 110-113; 538 NW2d 356 (1995).

Defendant indeed chose to testify at trial and attempted to explain his possession of the victim's belongings by telling the jury that an accomplice had stolen the items and given them to defendant to sell. Defendant attempted to explain why his DNA would be found on intimate areas of the victim's body by claiming that he had been having an extramarital affair with her for several months. And in his closing argument, defense counsel argued that it was the accomplice who committed the murder, despite the fact that virtually no evidence presented at trial connected the accomplice to the murder. Both in questions posed to defendant and in his rebuttal to defendant's closing argument, the prosecutor asked defendant if anyone else could support these claims. This was entirely proper as being fairly responsive to defendant's defense. See *Fields*, 450 Mich at 115-116. Additionally, the trial court properly instructed the jury that defendant was presumed innocent, that the burden of proof was on the prosecutor, that nothing stated by the prosecutor constituted evidence, and that defendant was "not required to prove his innocence or to do anything." These instructions are presumed to have alleviated any possible prejudice arising from the prosecutor's questioning of defendant and the prosecutor's closing argument. See *Fyda*, 288 Mich App at 465.

Defendant's related claim that counsel was ineffective lacks merit. Counsel is not ineffective for failing to raise meritless or futile objections. *People v Bailey*, 310 Mich App 703, 728; 873 NW2d 855 (2015). As no instances of misconduct occurred, defense counsel had no objections to make, and thus, was not ineffective.

Defendant next contends that the prosecutor erred by eliciting testimony that defendant was unemployed at the time of the murder, and that trial counsel was ineffective for failing to

---

[1] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

object. We disagree. Because defendant did not raise his claim of prosecutorial misconduct below, our review is for plain error affecting substantial rights. *Brown*, 294 Mich App at 382.

As a general matter, evidence of poverty or unemployment is usually inadmissible as lacking in probative value but with great potential for unfair prejudice; however, the particular circumstances of a given case may make a defendant's unemployment relevant. *People v Henderson*, 408 Mich 56, 66; 289 NW2d 376 (1980). Motive for a theft offense is usually "a collateral issue of minimal importance," but in some cases the reason why a defendant might commit a theft could be baffling to the jury without some explanation. *Id*. at 66-68. The case defendant cites stands for the reasonable and proper proposition that poverty does not itself constitute evidence of *intent*, nor is it direct evidence of a crime. *People v Johnson*, 393 Mich 488, 491-500; 227 NW2d 523 (1975). We do not accept defendant's conclusion that evidence of or commentary on his employment status is inherently forbidden and inherently deprives him of a fair trial.

Defendant does not articulate why he suffered *actual* prejudice in this matter from the evidence of his unemployment beyond a conclusory statement to that effect. We find such a statement unpersuasive. See *Mitcham v City of Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). In light of the overwhelming other evidence against defendant, we fail to perceive how any prejudice, even if admission of the testimony was erroneous, could have been more than trivial. In any event, defendant was charged with first-degree felony murder, not larceny, and the evidence of his recent loss of employment was admitted not to show a motive to commit theft, but to show why defendant suddenly decided to brutally murder the victim despite having lived across the hall from her for several months. It was not admitted for the purpose of showing that he was a generally bad person, *Henderson*, 408 Mich at 66, or for the purpose of showing some kind of generalized propensity toward committing larceny. Furthermore, it did not stand alone, but was rather in the context of various other issues defendant had with anger and alcohol. Under the circumstances, its admissibility would not fall outside the range of principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

Likewise, we find no lack of good faith on the part of the prosecutor. *Abraham*, 256 Mich App at 278. There is no indication that the prosecutor acted in bad faith by eliciting this testimony. Indeed, the record shows that a bench conference was held when the prosecutor first inquired into defendant's employment history, after which no objections were placed on the record and the prosecutor continued that line of inquiry. We simply cannot conceive of how the prosecutor could be said to have elicited this evidence in bad faith where the matter was discussed by the prosecutor, defense counsel, and the trial court, and there was no objection. As such, defendant is not entitled to relief with regard to his claim of prosecutorial misconduct.

Finally, we reject defendant's claim of ineffective assistance of counsel. We do not find the admission of this testimony to have been an abuse of discretion by the trial court, and we find the other evidence against defendant to be overwhelming. There is no indication that its introduction affected the outcome of the proceedings, and any objection would have been futile. See *People v Foster*, 319 Mich App 365, 390-391; 901 NW2d 127 (2017). Furthermore, defendant's entire defense was that he was engaging in a scheme of fencing stolen property, which in turn would be explained by his need for money, as demonstrated by his recent loss of employment. Decisions regarding what evidence should be put to the jury are generally

presumed to be matters of trial strategy, and we will not second-guess them with the benefit of hindsight. *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999).

Finally, defendant argues that even if the prejudice from each individual instance of alleged prosecutorial error would not warrant a new trial, the cumulative effect thereof would. We disagree. As this Court explained in *Dobek*, 274 Mich App at 106:

> We review this issue to determine if the combination of alleged errors denied defendant a fair trial. The cumulative effect of several errors can constitute sufficient prejudice to warrant reversal even when any one of the errors alone would not merit reversal, but the cumulative effect of the errors must undermine the confidence in the reliability of the verdict before a new trial is granted. Absent the establishment of errors, there can be no cumulative effect of errors meriting reversal. [Citations omitted.]

Because we do not find any prosecutorial error, there can be no cumulative error. *Id*.

Affirmed.

/s/ William B. Murphy
/s/ Kathleen Jansen
/s/ Amy Ronayne Krause