*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TIJUAN DELANE JONES,

Defendant-Appellant.

UNPUBLISHED
April 25, 2024

No. 361024
Washtenaw Circuit Court
LC No. 20-000255-FH

Before: GADOLA, C.J., and BORRELLO and PATEL, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of three counts of second-degree
criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) (sexual contact with a person who is under
13 years of age). The trial court sentenced defendant as a third-offense habitual offender,
MCL 769.11, to concurrent terms of 12 months in jail for each count. We affirm.

## I. BACKGROUND

This case arises out of defendant's sexual abuse of his 12-year-old daughter at her mother's
home in Washtenaw County. After she disclosed the abuse, Children's Protective Services (CPS)
and law enforcement talked to the victim and her family, and defendant voluntarily submitted to a
police interview. Defendant was charged with three counts of engaging in sexual contact with a
person under the age of 13. The charging document indicated that defendant engaged in sexual
contact with a person under the age of 13 at a residence[1] in Washtenaw County on three occasions
between August 1, 2019 to March 1, 2020.

The minor victim and the detective in charge of the case testified at the preliminary
examination. Following the preliminary examination, the district court found that probable cause
was presented to support the charges in the criminal complaint based on three specific instances

---

[1] The minor victim's mother's home address was included on the charging document as the
location of each of the three incidents.

of criminal sexual conduct described by the minor victim, and the trial court summarized the victim's testimony regarding each of the three incidents. Defendant was bound over to circuit court. The prosecution subsequently submitted an information charging defendant with three counts of CSC-II indicating that defendant engaged in sexual contact with a person under the age of 13 at a residence in Washtenaw County on three occasions between August 1, 2019 to March 1, 2020. After defendant was bound over, he moved for a bill of particulars pursuant to MCR 6.112(E) and MCL 767.44, requesting "exact dates, times, location, and details of each incident . . ." The trial court denied the request, concluding that the prosecution had given as much specificity as could be provided under the circumstances.

A jury found defendant guilty on all counts. Following the verdict, defendant moved for judgment notwithstanding the verdict (JNOV), arguing that the jury was unaware of what action each count consisted of, several government witnesses committed perjury at trial, the prosecutor used other-acts evidence to discredit defendant without prior notice, and the evidence was insufficient to find defendant guilty beyond a reasonable doubt. The trial court denied the motion. Defendant filed a motion for new trial alleging the same defects as his motion for JNOV. The court also denied that motion. The trial court sentenced defendant to 5 years' probation with incarceration for the first 12 months. As part of his sentence, the trial court ordered that defendant register pursuant to the Sex Offenders Registration Act and comply with lifetime GPS-tether monitoring.[2] After sentencing, defendant filed a motion for new trial and for evidentiary hearing raising many of the claims that he raises in this appeal. The trial court denied defendant's request for a new trial or evidentiary hearing. This appeal followed.[3]

## II. BILL OF PARTICULARS

Defendant contends that the trial court's denial of his request for a bill of particulars denied him the ability to adequately prepare a defense. We disagree.

We review for an abuse of discretion a trial court's decision whether to order a bill of particulars. *People v Southern*, 306 Mich 324, 326; 10 NW2d 901 (1943). See also *People v Jones*, 75 Mich App 261, 269; 254 NW2d 863 (1977). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *People v Buie*, 491 Mich 294, 320; 817 NW2d 33 (2012).

"The Due Process Clause of the Fourteenth Amendment mandates that a state's method for charging a crime give a defendant fair notice of the charge against the defendant, to permit the

---

[2] The trial court later entered a judgment of resentence removing the lifetime GPS-tether monitoring requirement and crediting defendant for 365 days in jail.

[3] Defendant moved to remand, raising the same issues he raised in his motion for new trial and evidentiary hearing and in his brief on appeal, except for his additional claim on appeal that the cumulative errors denied him a fair trial. This Court denied the motion. *People v Jones*, unpublished order of the Court of Appeals, entered October 5, 2023 (Docket No. 361024).

defendant to adequately prepare a defense." *People v Chapo*, 283 Mich App 360, 364; 770 NW2d 68 (2009). MCL 767.45(1) states that the information shall contain the following:

> (a) The nature of the offense stated in language which will fairly apprise the accused and the court of the offense charged.
>
> (b) The time of the offense as near as may be. No variance as to time shall be fatal unless time is of the essence of the offense.
>
> (c) That the offense was committed in the county or within the jurisdiction of the court. No verdict shall be set aside or a new trial granted by reason of failure to prove that the offense was committed in the county or within the jurisdiction of the court unless the accused raises the issue before the case is submitted to the jury.

MCR 6.112(E) provides, "The court, on motion, may order the prosecutor to provide the defendant a bill of particulars describing the essential facts of the alleged offense." Generally, a preliminary examination removes any need for a bill of particulars because it informs the defendant of the nature of the charges against him. *People v Harbour*, 76 Mich App 552, 557; 257 NW2d 165 (1977); *People v Jones*, 75 Mich App 261, 270; 254 NW2d 863 (1977). "Time is not of the essence, nor is it a material element, in criminal sexual conduct cases involving a child victim." *People v Dobek*, 274 Mich App 58, 83; 732 NW2d 546 (2007). As this Court explained in *People v Gaines*, 306 Mich App 289, 298-299; 856 NW2d 222 (2014):

> "[I]n *People v Howell*, 396 Mich 16, 27 n 13; 238 NW2d 148 (1976), the Supreme Court suggested that an imprecise time allegation would be acceptable for sexual offenses involving children, given their difficulty in recalling precise dates." *People v Naugle*, 152 Mich App 227, 234 n 1; 393 NW2d 592 (1986) (the child victim in *Naugle* was molested from age 8 to 13, a detective testified that children have difficulty remembering the exact dates of individual assaults, and this Court held "it is conceivable that specific dates would not stick out in her mind") *id*. at 235.

For this reason, when the allegations are reasonably clear, time is not an essential element of the offense, the event occurred within the time for prosecution, the prosecutor made a good-faith effort to establish when the events occurred, and the court held a preliminary examination, the charging documents need not set forth specific dates and times. *Gaines*, 306 Mich App at 298-299. Further, "[p]rejudice is essential to any claim of inadequate notice." *Chapo*, 283 Mich App at 364.

In this case, the charging document indicated that defendant engaged in sexual contact with a person under the age of 13 at an identified residence in Washtenaw County on three occasions between August 1, 2019 to March 1, 2020. The prosecution made a good-faith effort to establish the dates of the offenses. The victim testified at the preliminary examination that she was 12 years old and that defendant was her father. She described a specific incident of defendant's sexual contact with her in the summer of 2019 at her mother's home. She also testified that between November 2019 and January 2020, defendant was angry because she said that she hated him and, after they argued, defendant told her to sleep on the living room sofa. The victim described defendant's sexual contact with her on that occasion at her mother's home. The victim described

another incident involving defendant's sexual contact with her in February 2020 at her mother's home. In addition to the three specific incidents, the victim testified that defendant engaged in sexual contact with her approximately every two weeks from the summer of 2019 until February or March 2020. Although the minor victim did not give specific dates and times of the three incidents, she was able to provide approximate dates and give enough surrounding detail of the events for defendant to understand when and where the crimes were alleged to have occurred. The district court found that the minor victim's testimony at the preliminary exam was credible as to the three specific instances she described and bound defendant over on three counts of CSC-II.

Further, defendant has not demonstrated that he was prejudiced by the fact that the information did not provide greater specificity. The minor victim testified at the preliminary examination regarding the time frame during which the criminal sexual conduct occurred. At trial, defendant maintained that the victim fabricated her allegations of sexual abuse. Defendant testified that the victim was angry because he disciplined her, and he called witnesses who testified that the victim's claims about defendant's conduct changed over time and that she did not have a reputation for truthfulness. The record reflects that defendant was aware of the charges against him, and he was able to present a defense against the victim's allegations. Accordingly, we find that the trial court did not abuse its discretion by denying defendant's request for a bill of particulars.

III. SPECIFIC UNANIMITY INSTRUCTION

Defendant next claims that the trial court erred when it failed to give a specific unanimity instruction to the jury. We disagree.

As a threshold issue, defendant did not object to the trial court's jury instruction regarding unanimity or request a specific jury instruction on unanimity. And during the jury's deliberations, when the jury asked which conduct related to each of the three CSC-II charges, defendant declined to have the trial court give the jury any further instructions about matching specific conduct to each charge. In fact, defense counsel insisted that the trial court should not further instruct the jury that it must agree on the specific conduct that proved each count and instead asked the trial court to instruct the jurors that they must rely only on their memories and notes to determine whether the prosecutor presented sufficient evidence to find defendant guilty of the charges. Accordingly, this issue is not preserved for appellate review. See MCR 2.512(C); *People v Czuprynski*, 325 Mich App 449, 466, 926 NW2d 282 (2018) (holding that a claim regarding jury instructions is preserved "by challenging [that] aspect of the jury instructions in the trial court.").

We review unpreserved claims of constitutional error for plain error affecting the defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. at 763. To satisfy the third element, the defendant must show that the error "affected the outcome of the lower court proceedings." *Id*. "[O]nce a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse." *Id*. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (cleaned up).

"A criminal defendant has the right to have a properly instructed jury consider the evidence against him." *People v Mills*, 450 Mich 61, 80; 537 NW2d 909 (1995). Further, the right to a trial by jury enshrined in the Sixth Amendment of the United States Constitution,[4] which applies to the states via the Fourteenth Amendment, "includes a requirement that the verdict should be unanimous." *Ramos v Louisiana*, 590 US __, __; 140 S Ct 1390, 1396-1397; 206 L Ed 2d 583 (2020). Similarly, "[c]riminal defendants are guaranteed a unanimous jury verdict under the state constitution." *People v Gadomski*, 232 Mich App 24, 30; 592 NW2d 75 (1998), citing Const 1963, art 1, § 14. "In order to protect a defendant's right to a unanimous verdict, it is the duty of the trial court to properly instruct the jury regarding the unanimity requirement." *People v Cooks*, 446 Mich 503, 511, 521 NW2d 275 (1994). While a general instruction on unanimity is often sufficient to fulfill this duty, "when the state offers evidence of multiple acts by a defendant, each of which would satisfy the *actus reus* element of a single charged offense, the trial court is required to instruct the jury that it must unanimously agree on the same specific act if the acts are materially distinct or if there is reason to believe the jurors may be confused or disagree about the factual basis of the defendant's guilt." *Id*. at 512. "The critical inquiry is whether either party has presented evidence that materially distinguishes any of the alleged multiple acts from the others." *Id*. "[W]hen a statute lists alternative means of committing an offense which in and of themselves do not constitute separate and distinct offenses, jury unanimity is not required with regard to the alternate theory." *People v Chelmicki*, 305 Mich App 58, 68; 850 NW2d 612 (2014) (cleaned up).

In this case, defendant was charged with three separate counts of CSC-II. Although there are statutory variations of CSC-II, the jury was instructed that the prosecution had to prove each of the following elements beyond a reasonable doubt:

> First, that the defendant intentionally touched [the victim]'s genital area, inner thigh, buttock, or breast or the clothing covering that area or made [the victim] touch his genital area or groin or the clothing covering that area.

> Second, that this was done for sexual purposes or could reasonably be construed as having been done for sexual purposes.

> Third, that [the victim] was less than 13 years old at the time of the alleged act.

The jury was further instructed that it must consider each of the three counts of CSC-II separately and it could "find the defendant guilty of all or any combination of these crimes or not guilty." The jury was further instructed, "A verdict in a criminal case must be unanimous. In order to return a verdict, it is necessary that each of you agrees on that verdict."

The prosecution did not allege multiple, materially distinct acts to prove defendant committed each CSC-II offense. For each of the three offenses, the prosecution presented testimony and evidence establishing that defendant had sexual contact with his daughter who was less that 13 years old at the time of each offense. The defense was also the same for all three offenses: defendant maintained that the victim fabricated her allegations of sexual abuse.

---

[4] US Const, Am VI.

Defendant testified that the victim was angry because he disciplined her, and he called witnesses who testified that the victim's claims about defendant's conduct changed over time and that she did not have a reputation for truthfulness. On these facts, defendant has failed to show that the absence of a specific unanimity instruction constituted plain error. See *Carines*, 460 Mich at 763.

Defendant alternatively argues that the failure of his trial counsel to either request a specific unanimity instruction or object to the jury instructions constituted ineffective assistance, necessitating a new trial. We disagree.

The United States and Michigan Constitutions afford criminal defendants the right to effective assistance of counsel. *People v Yeager*, 511 Mich 478, 488; __ NW2d __ (2023), citing Const 1963, art 1, § 20; US Const Am VI; *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). An ineffective-assistance-of-counsel claim presents a "mixed question of fact and constitutional law." *Yeager*, 511 Mich at 487. Constitutional questions are reviewed de novo, while the trial court's findings of fact are reviewed for clear error. *Id.*

To prevail on a claim of ineffective assistance, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that [the] outcome would have been different." *Yeager*, 511 Mich at 488 (cleaned up). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (cleaned up). Defense counsel should be "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 US at 688, 690; see also *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012). We will not find trial counsel to be ineffective where an objection would have been meritless or futile, *Head*, 323 Mich App at 539, nor will we second-guess matters of trial strategy or "assess counsel's competence with the benefit of hindsight." *People v Abcumby-Blair*, 335 Mich App 210, 237; 966 NW2d 437 (2020) (cleaned up).

Because a special unanimity jury instruction was not required, a request for that instruction, or an objection to the general unanimity instruction given would have been futile. Defense counsel was not ineffective for failing to advocate for a meritless position. See *Head*, 323 Mich App at 539.

## IV. PROSECUTORIAL MISCONDUCT

Defendant raises several unpreserved claims of prosecutorial misconduct, including that the prosecutor knowingly presented false evidence and used evidence of defendant's and his partner's poverty to encourage the jury to find defendant guilty.

Because the challenged conduct was not preserved by contemporaneous objections and requests for curative instructions, *People v Evans*, 335 Mich App 76, 88; 966NW2d 402 (2020), our review is for plain error affecting defendant's substantial rights, *Carines*, 460 Mich at 763-764.

A prosecutor may not knowingly use false evidence to obtain a conviction and may not allow false testimony to go uncorrected. *People v Smith*, 498 Mich 466, 475-476; 870 NW2d 299 (2015). We review prosecutorial misconduct issues on a case-by-case basis. *People v Mullins*, 322 Mich App 151, 172; 911 NW2d 201 (2017). We review "the prosecutor's remarks in context

to determine whether the defendant was denied a fair and impartial trial." *Id*. (cleaned up). "The prosecutor's statements are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial." *Id*. (cleaned up). "Generally, prosecutors are given great latitude regarding their arguments and are free to argue the evidence and all reasonable inferences from the evidence as they relate to their theory of the case." *Id*. (cleaned up). In making those arguments, "[t]he prosecutor need not speak in the blandest of all possible terms." *People v Blevins*, 314 Mich App 339, 355; 886 NW2d 456 (2016) (cleaned up). "Further, [this Court] cannot find error requiring reversal where a curative instruction could have alleviated any prejudicial effect." *People v Callon*, 256 Mich App 312, 329-330; 662 NW2d 501 (2003). Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements, and jurors are presumed to follow their instructions. *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008).

Defendant argues that the prosecutor presented the testimony of CPS worker, Stacie Kinel, about her interview with the victim even though the prosecutor knew that Kinel's testimony was untruthful. During her direct examination, Kinel testified that she followed correct protocols when she interviewed the victim. On cross examination, defense counsel used video footage of Kinel's interview with the victim to rebut various assertions that Kinel made during her direct examination. The record reflects that certain protocols that Kinel should have followed were not on the video recording and that Kinel also put some incorrect information in her report about what she said to the victim and what the victim told her about things like her favorite food, her chores, and whether she had enough to eat at home or otherwise felt unsafe. But it also appears that Kinel attempted, to the best of her ability, to follow correct interviewing protocols and that she largely did so when she talked to the victim about her allegations of defendant's sexual abuse. The testimony also established that the interview took Kinel off-guard because she did not plan to interview the victim, she was inexperienced and untrained at interviewing child sexual-abuse victims, and she also repeatedly said that the victim would be properly interviewed by someone qualified to do so at the Child Advocacy Center (CAC). This did not occur because, although Kinel did not know it at the time, the CAC was closed because of mandatory COVID-19 protocols, and the prosecutor ultimately decided that another interview was unnecessary. Under the circumstances, we cannot conclude that any false testimony went uncorrected or that there was a reasonable likelihood that the jury relied on false evidence during its deliberations. See *People v Smith*, 498 Mich 466, 475-476; 870 NW2d 299 (2015).

Defendant also contends that the prosecutor made impermissible references to defendant's financial status to discredit his defense. Generally, our courts view prosecutorial references to a person's financial problems as irrelevant to establish motive as well as improper and unfairly prejudicial. *People v Henderson*, 408 Mich 56, 66; 289 NW2d 376 (1980). Further, a prosecutor may not comment on a defendant's poverty to attack that defendant's credibility. *People v Johnson*, 393 Mich 488, 498; 227 NW2d 523 (1975). But we must review the prosecutor's remarks in context. *Mullins*, 322 Mich App at 172.

During his trial testimony, defendant stated that his job was to work and take care of his family and that he gave what he earned at his job to his partner, the victim's mother, for her to use in raising their children. During cross-examination, defendant testified that he sometimes lived at a house in Detroit, sometimes at his own apartment in Ypsilanti, and sometimes with the victim's mother and their children in Ann Arbor. Defendant admitted, however, that he was not on the

lease for the victim's mother's apartment and that he did not consider her apartment his home. The prosecutor stated that she did not understand why defendant did not live with his partner and children if he considered himself a family man who supported his partner and children. Defendant admitted that he could not be on the victim's mother's lease because she was receiving public assistance. The prosecutor did not suggest that defendant committed the sexual assaults because his family was poor, nor did she suggest that defendant was more likely to be dishonest because he was poor. Rather, the prosecutor highlighted defendant's inconsistent statements that he was a family man and involved father, but his family was living in low-income housing and he lived separately. The prosecutor is free to argue reasonable inferences arising from the evidence. *Mullins*, 322 Mich App 172. In context of the record as a whole, we find that the prosecutor's remarks did not deprive defendant of his right to a fair trial.

Moreover, the trial court instructed the jury:

The lawyers' statements and arguments are not evidence. They are only meant to help you understand the evidence and each side's legal theories. You should only accept things the lawyers say that are supported by the evidence or by your own common sense and general knowledge.

The lawyers' questions to the witnesses and my questions to the witnesses are also not evidence. You should consider these questions only as they give meaning to the witnesses' answers.

"Jurors are presumed to follow the court's instructions, and instructions are presumed to cure most errors." *Mullins*, 322 Mich App at 173.

Defendant also takes issue with the following remarks that the prosecutor made during her closing argument:

I didn't call the mom as a witness. I didn't call [the victim's mother] as a witness. I don't know what the relationship is, the setup, this we're living in this home where—as a family unit but he's not here, and so that's her money source. She has nine kids and he's her financial money source. So to call her in and testify against him, she loses all the financial resources for her family.

The prosecutor did not state that the victim's mother would lie because of financial need but that calling her as a witness would have put her in a difficult position because it would put her financial resources from defendant in jeopardy. This argument was not an impermissible reference to the victim's mother's poverty or that her poverty would cause her to lie. The prosecutor is free to argue reasonable inferences arising from the evidence. *Mullins*, 322 Mich App 172. Given defendant's testimony, the inference that he could have an undue influence on the victim's mother was logical. In context of the record as a whole, we find that the prosecutor's remarks did not deprive defendant of his right to a fair trial.

Defendant alternatively argues that the failure of his trial counsel to object to the prosecutor's remarks constituted ineffective assistance, necessitating a new trial. We disagree. Because the prosecutor's remarks were not improper, objections to the remarks would have been

futile. Defense counsel was not ineffective for failing to advocate for a meritless position. See *Head*, 323 Mich App at 539.

## V. OTHER-ACTS EVIDENCE

Defendant further argues that the trial court abused its discretion by admitting evidence that he possessed a gun because it was irrelevant and constituted inadmissible propensity evidence. We disagree.

"When the issue is preserved, we review a trial court's decision to admit evidence for an abuse of discretion, but review de novo preliminary questions of law, such as whether a rule of evidence precludes admissibility." *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014). "The decision to admit evidence is within the trial court's discretion and will not be disturbed unless that decision falls outside the range of principled outcomes. A decision on a close evidentiary question ordinarily cannot be an abuse of discretion." *People v Thorpe*, 504 Mich 230, 251-252, 934 NW2d 693 (2019) (cleaned up).

During cross-examination, defendant testified that he never lied during his interview with the detective in charge. The prosecutor asked defendant whether the detective asked about a weapon that she saw him holding in a video, and defense counsel objected. Defendant testified that he did not remember what he said to the detective about holding a weapon. The prosecutor refreshed defendant's recollection by showing defendant, only, a Facebook video of him holding the weapon. Defendant continued to claim that he never told the detective that the gun was a toy. The prosecutor recalled the detective as a rebuttal witness, and asked her if defendant had lied that the gun was a toy. She testified that he had.

At trial, relevant evidence is generally admissible and irrelevant evidence is generally inadmissible. MRE 402. The credibility of witnesses is always relevant. *People v Spaulding*, 332 Mich App 638, 660; 957 NW2d 843 (2020). As our Supreme Court has observed, "[i]n most criminal sexual conduct cases there are no nonparticipant witnesses to the crime, which reduces the cases to weighing the defendant's credibility against that of the victim[ ]." *People v Beckley*, 434 Mich 691, 717; 456 NW2d 391 (1990). This case is a credibility contest. Defendant maintained that he never lied to the police during the investigation. And his defense strategy was to convince the jury that the victim fabricated her allegations of sexual abuse. The trial court did not abuse its discretion by allowing the prosecutor to ask defendant about his answer to the detective regarding the gun. Because this evidence assisted the jury in determining defendant's credibility, the evidence was relevant.

Defendant argues that the evidence, if relevant, was otherwise inadmissible because it constituted propensity evidence. MRE 404(b) bars the admission of other-acts evidence for the purpose of showing a defendant's propensity to commit similar acts. The record reflects that the prosecutor used the evidence to rebut defendant's assertion that he was always truthful during his police interviews. Because the prosecutor did not present defendant's possession of a weapon as a crime or wrong for purposes of MRE 404(b), and did not present it to show defendant's character, MRE 404(b) does not apply.

The evidence was also not unfairly prejudicial to defendant. MRE 403 provides that relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." "All evidence offered by the parties is 'prejudicial' to some extent, but the fear of prejudice does not generally render the evidence inadmissible." *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995). "[E]vidence is unfairly prejudicial when there exists a danger that marginally probative evidence might be given undue weight by the jury." *People v Dixon-Bey*, 321 Mich App 490, 513; 909 NW2d 458 (2017). The probative value of this evidence was not substantially outweighed by the risk of unfair prejudice, nor is there any evidence that the jury was confused or unduly influenced by this line of questioning.

Defendant further argues that the detective's rebuttal testimony related to a collateral issue and that defendant's possession of a gun in a Facebook video was not relevant to establish any fact in issue or to show whether he sexually assaulted the victim and thus was inadmissible under MRE 608(b).[5] In general, "a witness may not be contradicted regarding collateral, irrelevant, or immaterial matters." *People v Vasher*, 449 Mich 494, 504; 537 NW2d 168 (1995); see MRE 608(b). But a party may introduce rebuttal evidence to contradict the answers elicited from a witness on cross-examination regarding matters germane to the issue if the rebuttal evidence is narrowly focused on refuting the witness's statements. *Id.* The detective's rebuttal testimony fits into this narrow exception and thus was admissible.

Defendant alternatively argues that he was deprived of the effective assistance of counsel because, although defense counsel objected to the prosecutor's cross-examination about the gun, she should have objected to the detective's rebuttal testimony because it constituted extrinsic evidence on a collateral issue. Because the detective's rebuttal testimony was proper impeachment evidence, an objection would have been futile. Defense counsel was not ineffective for failing to advocate for a meritless position. See *Head*, 323 Mich App at 539.

Because we conclude that defendant has failed to establish that any error occurred, we find no merit to his claim that the cumulative effect of errors denied him a fair trial. See *People v Mayhew*, 236 Mich App 112, 128; 600 NW2d 370 (1999).

Affirmed.

/s/ Michael F. Gadola
/s/ Stephen L. Borrello
/s/ Sima G. Patel

---

[5] Because defendant did not object to the detective's rebuttal testimony, our review is for plain error affecting defendant's substantial rights, *Carines*, 460 Mich at 763-764.

-10-